1                IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAII

3

UNITED STATES OF AMERICA,      )  CRIMINAL NO. 17-00582JMS-RLP
4                               )
              Plaintiff,        )  Honolulu, Hawaii
5                               )  November 8, 2017
         vs.                    )
6                               )
KATHERINE P. KEALOHA (1),       )  STATUS CONFERENCE RE: [74]
7   aka Katherine E. Kealoha,   )  MOTION TO DISQUALIFY
    aka Kathy Kealoha,          )  DEFENSE ATTORNEYS MYLES S.
8   aka Kat, aka Alison Lee     )  BREINER AND KEVIN P.H.
Wong, LOUIS M. KEALOHA (2),     )  SUMIDA
9   DEREK WAYNE HAHN (3),       )
MINH-HUNG NGUYEN (4),           )
10   aka Bobby Nguyen,          )
GORDON SHIRAISHI (5), and       )
11  DANIEL SELLERS (6),         )
                                )
12              Defendants.     )
    ─────────────────────────── )
13

14                  TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE J. MICHAEL SEABRIGHT
15               CHIEF UNITED STATES DISTRICT JUDGE

16  APPEARANCES:

17  For the Government:      MICHAEL G. WHEAT, ESQ.
                            ERIC J. BESTE, ESQ.
18                          Special Attorneys to the
                             Attorney General
19                          United States Attorney's Office
                            880 Front Street, Room 6293
20                          San Diego, California  92101

21

22  For Defendant           MYLES S. BREINER, ESQ.
    Katherine P. Kealoha:   Attorney at Law, Inc., ALC
23                          841 Bishop Street, Suite 2115
                            Honolulu, Hawaii  96813
24

25

```
 1    APPEARANCES (Cont'd.):

 2    For Defendant            GARY A. MODAFFERI, ESQ.
      Louis M. Kealoha:        Law Office of Gary A. Modafferi LLC
 3                             815 S. Casino Center Boulevard
                               Las Vegas, Nevada  89101
 4

 5    For Defendants           KEVIN P.H. SUMIDA, ESQ.
      Katherine P. Kealoha     Sumida Au & Wong, LLLC
 6    and Louis M. Kealoha:    73 Bishop Street, Suite 411
                               Honolulu, Hawaii  96813
 7

 8    For Defendant            BIRNEY B. BERVAR, ESQ.
      Derek Wayne Hahn:        Bervar & Jones
 9                             1100 Alakea Street, 20th Floor
                               Honolulu, Hawaii  96813
10

11    For Defendant            RANDALL K. HIRONAKA, ESQ.
      Minh-Hung Nguyen:        Miyoshi & Hironaka, LLLC
12                             345 Queen Street, Suite 600
                               Honolulu, Hawaii  96813
13

14    For Defendant            LARS ROBERT ISAACSON, ESQ.
      Gordon Shiraishi:        Attorney at Law
15                             547 Halekauwila Street, Suite 102
                               Honolulu, Hawaii  96813
16

17    For Defendant            RICHARD H.S. SING, ESQ.
      Daniel Sellers:          The Law Office of Richard H.S. Sing
18                             841 Bishop Street, Suite 410
                               Honolulu, Hawaii  96813
19

20
      Official Court           Cynthia Fazio, RMR, CRR, CRC
21    Reporter:                United States District Court
                               300 Ala Moana Blvd., C-270
22                             Honolulu, Hawaii  96850

23

24

25    Proceedings recorded by machine shorthand, transcript produced
      with computer-aided transcription (CAT).
```

```
 1   WEDNESDAY, NOVEMBER 8, 2017                    9:59 A.M.
 2            THE CLERK:  Criminal Number 17-00582JMS-RLP, United
 3   States of America versus defendant number one, Katherine P.
 4   Kealoha; defendant number two, Louis M. Kealoha; defendant
 5   number three, Derek Wayne Hahn; defendant number four,
 6   Minh-Hung Nguyen; defendant number five, Gordon Shiraishi; and
 7   defendant number six, Daniel Sellers.
 8            This case has been called for a status conference re:
 9   United States' Motion to Disqualify Defendants' Attorneys Myles
10   S. Breiner and Kevin P.H. Sumida, and the December 19, 2017,
11   trial date.
12            Counsel, please make your appearances for the record.
13            MR. WHEAT:  Michael Wheat and Eric Beste for the
14   United States, Your Honor.  Good morning.
15            MR. BESTE:  Good morning, Your Honor.
16            THE COURT:  Good morning.
17            MR. BREINER:  Myles Breiner on behalf of Katherine
18   Kealoha.
19            MR. MODAFFERI:  Good morning, Your Honor.  Gary
20   Modafferi on behalf of Mr. Kealoha.
21            MR. SUMIDA:  Good morning.  Kevin Sumida appearing on
22   behalf of Louis Kealoha and Katherine Kealoha.
23            THE COURT:  I was looking for you, Mr. Sumida.
24            MR. HIRONAKA:  Good morning, Your Honor.  Birney
25   Bervar on behalf of defendant number three, Derek Hahn.  I'd
```

 1   like to waive my client's presence this morning.

 2             THE COURT:  All right.  Thank you.

 3             MR. HIRONAKA:  Good morning, Your Honor.  Randy

 4   Hironaka on behalf of Bobby Nguyen.  I would also ask the Court

 5   my client's presence to be waived.

 6             THE COURT:  All right.

 7             MR. ISAACSON:  Your Honor, Lars Isaacson for Gordon

 8   Shiraishi.  We'd also ask to waive my client's presence.

 9             THE COURT:  Okay.  Thank you.

10             MR. SING:  Good morning, Your Honor.  Richard Sing on

11   behalf of Mr. Sellers.  He is not present.  We would also ask

12   to waive.

13             THE COURT:  All right.  Thank you.  Yes.  Okay.

14   Please be seated.

15             MR. SUMIDA:  Your Honor, excuse me.  May we also just

16   have the record --

17             THE COURT:  Okay.  You're going to have to use the

18   microphone or you're -- there's one right by Mr. Bervar.

19   You're just going to have to pass it around because the court

20   reporter is tied into the mics only.

21             MR. SUMIDA:  Just wanted the record to be clear that

22   the Kealohas are present in the courtroom.

23             THE COURT:  Yes.  Thank you.

24             Okay.  So things have changed a little since I

25   initially asked to get together.  So I think we need to sort of

1   be flexible and address this issue regarding the Motion to

2   Withdraw as Counsel.  And that is a motion brought by

3   Mr. Breiner and Mr. Sumida who presently represent Katherine

4   Kealoha and Gary Modafferi who represents Mr. Kealoha.

5          Mr. Sumida, are you still representing both of them?

6          MR. SUMIDA:  Your Honor, if this case had proceeded

7   further I would have represented only Mrs. Kealoha.

8          THE COURT:  Okay.  Right now though at least you're on

9   record as representing both?

10         MR. SUMIDA:  That's correct.

11         THE COURT:  Okay.  Very well.  Okay.

12         So I want to address the motion first and talk about

13  how we get to a resolution on that motion.  It may moot out the

14  Motion to Disqualify, it may not, depending on what I do and

15  how I do it.

16         I do want to though address a couple issues.  Because

17  there are some representations in the motion which it seems to

18  me are really put out, just sort of thrown out there and could

19  be used later in an effort to say that we were forced into

20  this, the Kealohas, to say we were forced into this position.

21  And there were two things that are said that I want to address.

22         First, the motion says that the defendants' assets

23  have been effectively frozen by the federal government.  I

24  don't know if you're referring to the Hawaii Kai house or what,

25  but we need to have a discussion about that.

1          And secondly, you say the terms of the bond prohibit

2    them from even applying for a loan.  Is that what the bond

3    says, Mr. Sumida?

4          MR. SUMIDA:  That's what the defendants had been

5    notified, Your Honor.

6          THE COURT:  Is that what the bond says?  Because maybe

7    you should read the bond before you write something.

8          MR. SUMIDA:  Thank you, Your Honor.

9          THE COURT:  Because that's not what it says.

10         MR. SUMIDA:  All right.  I have accepted my clients'

11   representation about what they were told.  So, yeah.

12         THE COURT:  It doesn't say that.  What it says is, for

13   both of them, that:  "You are prohibited from applying for or

14   receiving any loans or lines of credit or opening any bank

15   accounts unless otherwise approved by Pretrial Services."

16   That's always in these conditions.

17         I asked Pretrial Services to be here today,

18   Mr. Iverson is here, because I called him this morning to ask

19   was there any effort, any contact made to see if they could

20   apply for a loan.  And the answer was no.  And if they did, if

21   they did, the process would be that pretrial would take a hard

22   look at it.  And if they were uncertain they would come to me.

23   I might if I felt it appropriate to delegate that to somebody

24   else, another judicial officer, not anybody, to take a look at.

25   But I just want to be clear that we need to be careful in

1    representations to the Court as to what facts are on the

2    ground.

3              So, the bond allows loans with approval, loan

4    applications with approval.  But there's been no attempt to do

5    that.

6              Now, as far as the assets' been frozen, Mr. Sumida, do

7    you want to address that?

8              MR. SUMIDA:  Yes, Your Honor, the major asset which

9    they have is a house in Hawaii Kai.  And there's been a lis

10   pendens filed on that house, which makes it -- they were going

11   to try to sell it and raise funds for the defense, but you

12   know --

13             THE COURT:  Well, are the press -- are the media

14   reports incorrect regarding the mortgage and so forth on that

15   home?

16             MR. SUMIDA:  There is a first mortgage as well as a

17   mortgage --

18             THE COURT:  How much is the first mortgage?

19             MR. SUMIDA:  I don't have that exact information, Your

20   Honor.

21             THE COURT:  I mean I can tell you, I thought I had it

22   with me somewhere, but -- report on this.  I don't know it's

23   accurate.  I'm not suggesting it is or isn't, I'm just telling

24   you what's been reported, that the tax assessed value is

25   somewhere at 1.24, sounds neighborhoodish to me of what that

1    house might be worth, maybe a little bit north of that.  That

2    there's a first mortgage $980,000, a $90,000 home equity, and a

3    mortgage from your law firm up to $700,000.

4              MR. SUMIDA:  Yes.

5              THE COURT:  Which leaves zero or leaves a big

6    negative.  Right?

7              MR. SUMIDA:  Yes.

8              THE COURT:  Okay.  Anything else on that?

9              MR. SUMIDA:  No.  But the mortgage is -- for my law

10   firm, Your Honor, is up to $700,000.  And we were hoping to

11   free up those -- that cash to help pay for the defense.  As it

12   presently stands we're unable to do that.

13             THE COURT:  You think you could?  I mean, look, this

14   is what I'm saying, we need to be honest and have some

15   integrity here.

16             How much cash is there in that house, how much equity

17   is there in that house?

18             MR. SUMIDA:  The real estate market is supposed to be

19   fairly robust.  And so there may be 300, $400,000.

20             THE COURT:  And how much is owed to you?

21             MR. SUMIDA:  I haven't done the exact figures, Your

22   Honor, but --

23             THE COURT:  Give me a ballpark.

24             MR. SUMIDA:  Maybe 4 or $500,000, Your Honor.

25             THE COURT:  Yeah.  That's what I thought.  Again,

1    maybe a little integrity in the filings would be helpful.

2           MR. SUMIDA:  Your Honor, if those funds were freed up

3    and payable to my firm, we could have helped them with the

4    defense.

5           THE COURT:  If those funds were freed up?

6           MR. SUMIDA:  Yes.

7           THE COURT:  So if they sold the house and you were

8    paid what you were owed.

9           MR. SUMIDA:  Yes.

10          THE COURT:  Then you come current.

11          MR. SUMIDA:  Yes.

12          THE COURT:  And then they would have money to go

13    forward?

14          MR. SUMIDA:  No.  Then I would have stayed on a little

15    bit longer, Your Honor.

16          THE COURT:  Yeah, well, you can't stay on a little bit

17    longer.  You'd stay on through trial is what you stay on.

18    Understand that in criminal -- this isn't a civil case.

19          MR. SUMIDA:  All right.

20          THE COURT:  You don't go to the eve of trial and say,

21    oh, they ran out of money, they need another attorney.  It

22    doesn't work like that.  You'd be working for free if that was

23    the case because I wouldn't let you off the case at that time.

24    Okay?

25          MR. SUMIDA:  All right.  Thank you, Your Honor.

1           THE COURT:  All right.  Anything from the government

2    on that issue?

3           MR. BESTE:  No, Your Honor.

4           THE COURT:  All right.  So, I think the first issue to

5    resolve is whether or not they're qualified for appointment of

6    counsel, right?  And as I understand it they didn't -- and I

7    don't blame them, I mean I'm sure they want to look carefully

8    at the financial affidavit, they want to take some time to fill

9    out the financial affidavit.  Is that accurate?

10          MR. BREINER:  That's correct, Your Honor, and we're

11   asking that you do grant the motion but reserve on the issue of

12   their filling out the form, we need to go over with the --

13          THE COURT:  No, no, no, no, that's a preliminary

14   matter that has to be figured out.  So we're going to have to

15   come back.

16          MR. BREINER:  On the motion to withdraw?

17          THE COURT:  Yeah.  Right.  I mean I can tell you my

18   inclinations as to what I'm thinking down the line if I agree.

19          MR. BREINER:  Fair enough.

20          THE COURT:  Okay?  But again, the media report said

21   Mr. Kealoha has a healthy pension.  Whether that's enough, I

22   understand this case is going to be very expensive.  I fully

23   appreciate that, Mr. Breiner, and I'm not asking anyone to work

24   with closed eyes regarding that.  I mean I get that.  The

25   government has said you have some 250,000 pages of discovery;

1    is that right, Mr. Wheat?

2            MR. WHEAT:  That's in the ballpark, Your Honor.

3            THE COURT:  Ballpark, right.

4            MR. WHEAT:  Yeah.

5            MR. BREINER:  We were informed, initial discovery is a

6    quarter million pages of documents and 500 witnesses.

7            THE COURT:  Yeah, look, I don't know if 500 witnesses

8    is going to get by me, but -- for trial, but --

9            MR. WHEAT:  We're not talking about trial witnesses,

10   Your Honor, we're talking about people who have been

11   interviewed from whom there are statements.

12           THE COURT:  Okay.

13           MR. WHEAT:  But there's not going to be 500 witnesses

14   for trial.

15           MR. BREINER:  Whoever represents any of the defendants

16   in the case still has to review everything.

17           THE COURT:  Yes.

18           MR. BREINER:  And it's very time consuming.

19           THE COURT:  Absolutely.  Absolutely.

20           MR. BREINER:  And as far as their income, I know

21   they'll go over this, look at the papers filed under seal of

22   the Court to review.  As it presently stands, the only income

23   they have coming in is the pension of Mr. Kealoha.  Ms. Kealoha

24   does not have a pension from the Prosecutor's Office.  And they

25   have a daughter who is in college.  So --

1          THE COURT:  And lay all that out.  You know, I'll take

2     a hard look at that.

3          MR. BREINER:  Fair enough.

4          THE COURT:  And so the Kealohas understand also, the

5     other thing I can do is appoint but reserve the right later to

6     have you pay a portion of the funds.  I'm not saying I will or

7     won't do that, but I certainly can do that.  And it's likely I

8     would do that at a minimum.  It's not to say I'm going to do it

9     ultimately, but I would have the ability to do that, to take a

10    look down the road.  Okay.  So that's an option also.

11         MR. BREINER:  That's not a problem.

12         THE COURT:  Okay?  So let me tell you where I am, what

13    my thoughts are though about where we will go with this, so

14    everyone is clear.

15         MR. BREINER:  May I sit down?

16         THE COURT:  Yeah, of course.  Of course.  First,

17    Mr. Modafferi.

18         MR. MODAFFERI:  Yes, sir.

19         THE COURT:  Welcome back.

20         MR. MODAFFERI:  Thank you.  It's good to see you

21    again, Judge.

22         THE COURT:  You too.  But the fact of the matter is

23    you're new on this case and you don't live here.

24         MR. MODAFFERI:  Exactly.

25         THE COURT:  And so I would not appoint you as CJA

1    counsel --

2           MR. MODAFFERI:  Thank you.  I understand.

3           THE COURT:  -- in this case.  It just makes no sense

4    to do that given the fact you're new to the case, number one,

5    and number two, the distance, the fact you live in Las Vegas.

6    Okay?

7           So if I grant the motion I would get court-appointed

8    counsel for Mr. Kealoha.

9           Okay.  As far as Mr. Sumida and Mr. Breiner,

10   Mr. Sumida, my understanding is your practice is primarily

11   civil; is that right?

12          MR. SUMIDA:  That's correct, Your Honor.

13          THE COURT:  So what is your background in criminal

14   law?  Besides this investigation, this case that you --

15          MR. SUMIDA:  I don't practice in criminal court, Your

16   Honor.

17          THE COURT:  Yeah.  So it's very unlikely I will accept

18   you as well.

19          MR. SUMIDA:  Yes.

20          THE COURT:  For two reasons.  That number one,

21   primarily.  And number two, then there would be two counsel.

22   And Mr. Breiner has criminal law experience, so it would be no

23   sense to appoint you and not Mr. Breiner, if I were to do that.

24          MR. SUMIDA:  Yes.

25          THE COURT:  Okay.  So that leaves Mr. Breiner.  And my

1    inclination, I will hear from everybody on this, I don't know

2    if the government has any say in this or wants to be heard, my

3    inclination is not to appoint you, Mr. Breiner.

4         MR. BREINER:  I'm not on the CJA panel.  I wasn't

5    requesting appointment.

6         THE COURT:  Oh, I thought you were.

7         MR. BREINER:  No, I took myself off the CJA panel many

8    years ago.

9         THE COURT:  No, I understand that, but the motion asks

10   that you all be appointed as CJA counsel.

11        MR. SUMIDA:  Your Honor, motion actually asks for

12   appointment of pro hac vice of CJA counsel.

13        THE COURT:  Maybe I misread it.  I thought you were

14   asking that I appoint Mr. Modafferi, Mr. Breiner and you as CJA

15   counsel and you get paid at CJA rates.

16        MR. BREINER:  No.

17        MR. MODAFFERI:  No, Judge, that's not what we're

18   requesting.

19        MR. BREINER:  Apologize for the lack of clarity.

20        THE COURT:  Well, maybe it's the way I read it.

21   That's what I understood you to be requesting.

22        MR. BREINER:  I --

23        THE COURT:  But that's fine.  That clarification.

24        MR. BREINER:  That wasn't my intention and base it

25   upon the CJA rules and manual that we looked at that the Court

1    has the authority to appoint pro hac vice, someone from outside

2    the jurisdiction if necessary given that panel of available

3    attorneys could be appointed in this case has gotten rather

4    shallow.

5         THE COURT:  Yeah, it's the last sentence in your

6    motion that made me think you were asking that you be

7    appointed.  You're saying there's nobody who could be appointed

8    and work, so appoint us.  That's what I thought the point was.

9         MR. BREINER:  I was not asking to be appointed in this

10   matter.

11        THE COURT:  Okay.

12        MR. BREINER:  Given the -- the other motion filed by

13   the U.S. Attorney, special prosecutor, and the issue with my

14   clients' inability to finance their defense in this case, I

15   thought it behooved us to file this motion.  After consulting

16   with them yesterday indicating that they can't afford

17   representation, they need to be appointed.

18        THE COURT:  Okay.  All right.  So time wise then.

19   Let's talk about timing because we need to get this resolved

20   obviously.

21        MR. BREINER:  I agree.

22        THE COURT:  In short order.

23        MR. BREINER:  It's difficult for the other attorneys

24   to plan their schedule as well as for the government and as

25   well as the Court to look in your calendar in 2018 or 2019

 1    without having --

 2            THE COURT:  Well, we're not talking 2019, but just --

 3    so that's off the table.  Okay?

 4            MR. BREINER:  I kind of threw it out there.

 5            THE COURT:  Yeah, but you can throw out 2020, but it's

 6    not going to happen.

 7            MR. BREINER:  In any event --

 8            THE COURT:  And I want to talk to Mr. Isaacson about

 9    his motion.  Remind me, Mr. Isaacson, before we leave here

10    today.  Okay?

11            MR. ISAACSON:  Yes, Your Honor.

12            THE COURT:  Okay.  Regarding that issue of timing, I

13    want to talk to you about that.

14            MR. ISAACSON:  Yes, Your Honor.

15            THE COURT:  I mean do you want to come back this

16    afternoon, do you want to come back tomorrow?  What -- what --

17            MR. MODAFFERI:  Either one, Judge.  I'm available for

18    both.

19            MR. BREINER:  My difficulty is I have a -- I'm

20    supposed to appear in Maui before Judge Bissen on a sentencing

21    that's been continued repeatedly.  I have a flight that I catch

22    at 11:30 this morning.

23            THE COURT:  Okay.  So do you want to come back

24    tomorrow morning?

25            MR. BREINER:  That -- tomorrow morning?

1          MR. MODAFFERI:  Fine.

2          MR. BREINER:  Fine.

3          THE COURT:  That way the Kealohas can go home, they

4    can fill out the financial affidavit without, you know, time

5    constraints, right, and take a hard look at that.

6          MR. BREINER:  Can I check my calendar?

7          THE COURT:  Sure.

8          MR. BREINER:  I'll move what I have to move, I just

9    need to check it.

10          THE COURT:  Okay.

11          MR. WHEAT:  We're available in the morning.

12          THE COURT:  Mr. Modafferi, you'll still be here?

13          MR. MODAFFERI:  Yes, Your Honor.

14          THE COURT:  The rest of you won't need to come for

15    this because this will just be -- you can come, you're welcome.

16    I often make that offer and I never -- no one ever seems to

17    come when I offer people to come back to court.  But you can

18    come if you wish, but I think we'll just resolve this and

19    you'll hear about its resolution obviously.

20          MR. BREINER:  Can we set it for the late morning

21    tomorrow?  Would 11 -- 11 o'clock, Your Honor?

22                    (Court and clerk conferring.)

23          THE COURT:  Okay.  How about 11:15?

24          MR. BREINER:  Perfect.

25          THE COURT:  Okay?  I have something at 10:30.  So that

1    should work.

2              MR. BREINER:  Thank you for accommodating us.

3              MR. MODAFFERI:  Judge, would you like --

4              THE COURT:  So some of my comments, I want to be

5    clear, were based on an assumption, as I said, that you folks

6    were trying to get appointed on CJA --

7              MR. BREINER:  No, we looked --

8              THE COURT:  -- basis.  When I talked about why I

9    wouldn't appoint you, Mr. Modafferi, and why I wouldn't appoint

10   you, Mr. Sumida.  So, really the only question is whether they

11   qualify.  And if they do qualify, then, again, whether

12   provisionally or fully, then as I understand it none of you are

13   asking to be appointed as CJA counsel.

14             MR. MODAFFERI:  Correct, Judge.

15             THE COURT:  Correct?

16             MR. BREINER:  I'm sorry.  That's correct, Your Honor.

17             MR. SUMIDA:  That's correct.

18             THE COURT:  Okay.  All right.  All right.  Anything

19   else as to this motion then at this point?  We won't even take

20   up the Motion to Disqualify then until we know where we stand.

21             MR. WHEAT:  Understood.

22             THE COURT:  Right?

23             MR. WHEAT:  Agreed.

24             MR. MODAFFERI:  Judge, the information on the form, do

25   you want it before the hearing?

1          THE COURT:  You know, that would be good if I could

2     take a look at it.  And they'll have to be sworn to it.  So,

3     maybe if, Mr. Breiner or Mr. Modafferi, one of you can get --

4     well, first of all, should we do one form or two?  I think we

5     need to do two.  I don't know if there are separate assets held

6     or not.

7          MR. BREINER:  Your clerk gave me two, one -- typed up.

8     One for Mr. Kealoha, one for Mrs. Kealoha.

9          THE COURT:  Perfect.  I think we need to do that.  If

10    there are joint assets, just make that real clear in the form,

11    okay, so that it's really clear what we're talking about.  I

12    mean I don't want any confusion as to a hundred thousand here,

13    a hundred thousand there I'm thinking means 200,000, right?  So

14    you have to be very clear as to what is joint and what might

15    not be.  And I have no idea.  So...

16         MR. MODAFFERI:  We can submit the information to Your

17    Honor before the hearing and have them sworn in court.

18         THE COURT:  That's fine.  Let's do that.  That makes

19    sense.

20         MR. BREINER:  Okay.

21         MR. SUMIDA:  Your Honor, do we have to file a motion,

22    have it filed under seal?

23         THE COURT:  No, that's filed under seal automatically.

24         MR. SUMIDA:  Thank you.

25         THE COURT:  Okay.  Anything else on that then from

```
 1   anybody?

 2            MR. BREINER:  No, Your Honor.

 3            MR. WHEAT:  No, Your Honor.

 4            MR. MODAFFERI:  When would the Court like that

 5   information, Judge, this afternoon?

 6            THE COURT:  You know, you can do it tomorrow morning,

 7   to give them the night, okay, to do it.

 8            MR. MODAFFERI:  Yes, Your Honor.

 9            THE COURT:  And then if somebody can bring it in

10   tomorrow morning, get it to Ms. Mizukami or directly to my

11   chambers.

12            MR. MODAFFERI:  Good enough.  We'll do that.

13            THE COURT:  Okay?

14            MR. MODAFFERI:  Yes.

15            MR. BREINER:  Our apologies for the lack of clarity in

16   that motion.  That would explain Your Honor's --

17            THE COURT:  Well, read it again.  I mean it sounds

18   like that's what you were seeking based on that last sentence.

19   Right?

20            Now, if I do bring in new counsel, I'm inclined to

21   deem the motions you've already filed, Mr. Sumida, withdrawn to

22   allow new counsel -- so new counsel can refile those, but

23   really new counsel should have carte blanche to take a look at

24   the case and decide what motions to file.  So I just want you

25   to understand that as well, that that would be my inclination.
```

 1          MR. SUMIDA:  Fine with me, Your Honor.

 2          THE COURT:  All right.  Anything -- before I have a

 3    discussion with Mr. Isaacson, anything else from anybody?

 4          MR. BERVAR:  On that issue or -- another issue,

 5    there's a Motion for a Protective Order.

 6          THE COURT:  Use the microphone.

 7          MR. BERVAR:  Oh, I'm sorry.  There's a Motion for a

 8    Protective Order.

 9          THE COURT:  That was sent down to Judge Puglisi.  And

10    I think he set that for hearing already.

11          MR. BERVAR:  Okay.  I think the only -- all right.

12    The Kealohas' counsel and Mr. Isaacson are -- the rest of us

13    are all in agreement on that.  Okay.  We'll deal with that in

14    front of the magistrate.

15          THE COURT:  Well, all I can tell you is the motion was

16    filed and it's been referred to the magistrate.

17          MR. BERVAR:  Okay.  All right.

18          THE COURT:  If everyone can stipulate, I'm happy to

19    sign or I'm sure he'd be happy to sign.  But as I understand it

20    there's no agreement.

21          MR. BERVAR:  Okay.  All right.

22          THE COURT:  Mr. Isaacson, then you filed what's

23    referred to as a Motion for Leave to File Other Motions,

24    Document 87.  Essentially asking to file motions beyond the

25    deadlines set by the Court.

1          MR. ISAACSON:  Yes, Your Honor.

2          THE COURT:  But that goes hand in glove with the trial

3    date.

4          MR. ISAACSON:  Yes.

5          THE COURT:  The way we always set these, when the

6    computer spits out the dates, and it's all of course as you

7    know based on the Speedy Trial Act initially, is that the

8    opposition from the government is due 30 days before the trial

9    date.

10          MR. ISAACSON:  Right, Your Honor.

11          THE COURT:  So giving you carte blanche to file when

12    you want doesn't work.

13          MR. ISAACSON:  No, Your Honor.

14          THE COURT:  So what we have to address eventually is a

15    trial date, not a motions date.

16          MR. ISAACSON:  Yes, Your Honor.  My client was

17    arraigned last week and they set a motions hearing dated

18    yesterday.

19          THE COURT:  Right, but the answer is not to seek an

20    extension to the motions.  I think the answer is the trial

21    date.

22          MR. ISAACSON:  Yes, Your Honor.

23          THE COURT:  And then talk about the motions that would

24    go with that.

25          MR. ISAACSON:  Yes, Your Honor.

1          THE COURT:  Okay?  So I'm assuming people will be
2     asking for more time eventually.  Is that accurate?
3          MR. ISAACSON:  Yes, Your Honor.
4          MR. BERVAR:  Yes.
5          MR. SING:  Yes.
6          THE COURT:  Okay.  And obviously right now you folks
7     can't speak, but if you do stay on the case for some reason
8     that would be the case?
9          MR. BERVAR:  Yes, Your Honor.
10          THE COURT:  I assume given Mr. Breiner's 2019 comment.
11          All right.  So I'm going to deny that without
12     prejudice.
13          MR. ISAACSON:  That's fine, Your Honor.
14          THE COURT:  Okay.  To us having a future discussion
15     about trial dates, understanding this trial date looks like
16     it's not going to stick.
17          MR. ISAACSON:  Yes, Your Honor.
18          THE COURT:  Okay?  My ultimate goal will be this??  Is
19     to engage in some pretty active management in this case.  That
20     would be including setting a trial date, pretrial motions to be
21     sufficiently in advance of that that any motions that would be
22     resolved and everyone would know where they stand with plenty
23     of time to prepare.  Right?  The normal schedule probably won't
24     work, right?  In a lot of respects.
25          The other thing that I'm going to -- and again, we

1    have to make sure we know exactly which counsel are on board,

2    that I'm going to want to have a discussion about is, we now

3    have two case budgeting attorneys in the Ninth Circuit for

4    complex criminal cases.

5           MR. ISAACSON:  May I sit, Your Honor?

6           THE COURT:  Yes, yes, yes.

7           There are guidelines as to when we at the district

8    level are supposed to refer cases to them.  And it seems to me

9    this case will easily meet those guidelines.

10          A lot of CJA attorneys when they hear this they

11   cringe, they don't like the concept, but those who undergo it

12   really like it.  Because they can point out to you resources

13   you may not know are available.  For instance, if there's

14   250,000 pages of discovery and you want somebody to help in the

15   organization of that in searching and so forth, they can help

16   find somebody who can do that sort of work outside, right?  So

17   what that person does is organize a lot of things that are

18   going on, on the defense team and make sure there's not a

19   duplication of expenses.

20          Also, as I understand what it does is, you sort of

21   provide budgets and if those budgets get approved, that's

22   presumptively reasonable going forward when the vouchers are

23   reviewed, that sort of thing.  So the lawyers like it for that

24   reason as well.  We don't have much of a culture of cutting

25   vouchers in this district.  Other districts have more so than

1    we do.  But that's another benefit to that process.

2            So I want to look a little further into that, wait and

3    see where we end up on counsel, but then probably refer counsel

4    to the Ninth Circuit case budgeting attorneys to start to have

5    some discussions.  Okay?  But that would be a little bit down

6    the road.

7            Hopefully your discovery is in the format that they

8    can read it easily.

9            MR. WHEAT:  Your Honor, as for the discovery, we

10   are -- we bought hard drives and we intend to download the hard

11   drives with the discovery in a searchable format.  We'll also

12   provide them, we've drafted, it's about in excess of 200 pages

13   in index for that discovery.  So it will be searchable and it

14   will be organized for them in a way that it'll be usable for

15   them.

16           THE COURT:  Okay.  Well, that's great.  You each get

17   your own temporary hard drive I guess.

18           All right.  Anything else then by way of status to

19   cover today?

20           MR. BREINER:  No, Your Honor.  Thank you.

21           THE COURT:  Before we come back tomorrow?

22           MR. MODAFFERI:  No, Your Honor.  Thank you.

23           MR. SUMIDA:  No, Your Honor.

24           MR. WHEAT:  Nothing further, Your Honor.  Thank you.

25           THE COURT:  All right.  Thank you all.

1              (The proceedings concluded at 10:25 a.m.,

2    November 8, 2017.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                       COURT REPORTER'S CERTIFICATE

2

3           I, CYNTHIA FAZIO, Official Court Reporter, United

4    States District Court, District of Hawaii, do hereby certify

5    that pursuant to 28 U.S.C. §753 the foregoing pages is a

6    complete, true, and correct transcript of the stenographically

7    reported proceedings held in the above-entitled matter and that

8    the transcript page format is in conformance with the

9    regulations of the Judicial Conference of the United States.

10
            DATED at Honolulu, Hawaii, December 22, 2017.
11

12

13                        */s/ Cynthia Fazio*
                         CYNTHIA FAZIO, RMR, CRR, CRC
14

15

16

17

18

19

20

21

22

23

24

25