IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   vs.<br><br>KATHERINE P. KEALOHA (1);<br>LOUIS M. KEALOHA (2);<br>DEREK WAYNE HAHN (3);<br>MINH-HUNG NGUYEN (4);<br>GORDON SHIRAISHI (5); and<br>DANIEL SELLERS (6),<br><br>                Defendants. | CR. NO. 17-00582 JMS-RLP<br><br>ORDER DENYING WITHOUT PREJUDICE KATHERINE KEALOHA AND LOUIS KEALOHA'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, ECF NO. 309 |

## **ORDER DENYING WITHOUT PREJUDICE KATHERINE KEALOHA AND LOUIS KEALOHA'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE, ECF NO. 309**

## **I. INTRODUCTION**

On January 11, 2019, Defendants Katherine Kealoha and Louis Kealoha (collectively, "Kealohas") filed a Motion to Suppress Evidence and Statements, ECF No. 309 ("Motion to Suppress"), claiming that they made involuntary statements to the Honolulu Ethics Commission ("Commission") in violation of their Fifth Amendment privilege against self-incrimination. The Motion to Suppress is premised on *Garrity v. New Jersey*, 385 U.S. 493 (1967),

holding that compelled statements made by a public employee secured through the threat of job loss cannot be used in a subsequent criminal proceeding. The United States filed its Response in Opposition on January 25, 2019. ECF No. 348. A hearing was held on February 11, 2019.

Because neither Katherine nor Louis Kealoha were compelled to make statements or forced to waive immunity in relation to those statements, the Motion to Suppress is DENIED.

## II. <u>DISCUSSION</u>

"In a series of cases involving the Fifth Amendment rights of public employees, the Supreme Court has made clear that public employees cannot be compelled to choose between providing unprotected incriminating testimony or losing their jobs." *Aguilera v. Baca*, 510 F.3d 1161, 1171 (9th Cir. 2007).

Applying this general rule, *Garrity* found statements to be coercive when made by police officers given "[t]he choice . . . between self-incrimination or job forfeiture." 385 U.S. at 496. Before questioning began, the police officers in *Garrity* were each told "(1) that anything he said might be used against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office." *Id.* at 494. No immunity was granted

nor was an immunity statute applicable, and the police officers' statements (over their objections) were later used against them in a conspiracy prosecution. *Id.* at 495.

> The Court suppressed the statements,[1] reasoning that
>
> [t]he option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices we reviewed in [*Miranda v. State of Arizona*, 384 U.S. 436, 464-65 (1966)], is likely to exert such pressure upon an individual as to disable him from making a free and rational choice. We think the statements were infected by the coercion inherent in this scheme of questioning and cannot be sustained as voluntary under our prior decisions.

*Id.* at 497-98 (citations, footnote, and editorial marks omitted); *cf. Minnesota v. Murphy*, 465 U.S. 420, 437 (1984) ("Unlike the police officers in [*Garrity*], [the defendant] was not expressly informed during the crucial meeting with his probation officer that an assertion of the privilege would result in the imposition of a penalty."). Accordingly, *Garrity* held that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent

---

[1] *Garrity* also rejected arguments that the police officers had waived their constitutional rights because "[w]here the choice is between the rock and the whirlpool, duress is inherent in deciding to waive one or the other." *Id.* at 498 (quotation marks omitted).

3

criminal proceedings of statements obtained under threat of removal from office . . . ." *Id.* at 500.

Although *Garrity* protects Fifth Amendment rights of public employees, "[t]he Court was careful, however, to preserve the right of a public employer to appropriately question an employee about matters relating to the employee's possible misconduct while on duty." *Aguilera*, 510 F.3d at 1171. For example, *Gardner v. Broderick*, 392 U.S. 273 (1968), stated that if the police officer in that case

> had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, the privilege against self-incrimination would not have been a bar to his dismissal.

*Id.* at 278 (citation and footnote omitted).

Applying this framework, *Aguilera* held that the Fifth Amendment privilege against self-incrimination was not violated when supervisors questioned sheriff deputies "about possible misconduct, given that the deputies were not compelled to answer the investigator's questions or to waive their immunity from self-incrimination. Indeed, it appears that the deputies were never even *asked* to waive their immunity." 510 F.3d at 1172.

> *Aguilera* continued:
>
>> In these circumstances, it is clear that the deputies' Fifth Amendment right against self-incrimination was not implicated by the supervisors' conduct. *See Hill v. Johnson*, 160 F.3d 469, 471 (8th Cir. 1998) (holding that "[t]he Fifth Amendment is violated only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers"); *Wiley* [*v. Mayor & City Council of Baltimore*, 48 F.3d 773 (4th Cir. 1995)], (holding that officers' Fifth Amendment rights were not violated given that the officers had not been asked to waive their privilege against self-incrimination and the questions posed to them were narrowly job-related).

*Id.*

The Kealohas fail on two basic fronts. First, there is simply no evidence that Katherine or Louis Kealoha was compelled to make any statement to the Commission. In fact, they appear to have answered some questions, but not others. Second, there is a similar lack of evidence that either Kealoha was compelled (or even asked) to waive their immunity.

///

///

///

///

5

Apparently recognizing these weaknesses, the Kealohas argue that their statements to the Commission were not voluntary because they were subject to Hawaii Revised Statutes ("HRS") § 78-9[2] and the Revised Charter of the City & County of Honolulu ("RCH") § 11-106.[3] They also essentially argue that Hawaii

---

[2] HRS § 78-9 provides:

> If any person subject to sections 78-8 to 78-11, *after lawful notice or process*, willfully refuses or fails to appear before any court or judge, any legislative committee, or any officer, board, or commission, or having appeared refuses to testify or to answer any question regarding (1) the government, property or affairs of the State or of any political subdivision thereof, or (2) the person's qualifications for public office or employment, or (3) the qualifications of any officer or employee of the State or any political subdivision thereof, on the ground that the person's answer would tend to incriminate the person, or refuses to testify or to answer any such question without right, the person's term or tenure of office or employment shall terminate and the office or employment shall be vacant, and the person shall not be eligible to election or appointment to any office or employment under the State or any political subdivision thereof. *To the extent that the State is without authority to require, under the constitution or laws of the United States, compliance by any public officer or public employee herewith, sections 78-8 to 78-11 shall not apply to the officer or employee,* but the sections shall apply to the extent that they or any part thereof can lawfully be made applicable.

(Emphases added).

[3] RCH § 11-106 provides:

> The failure to comply with or any violation of the standards of conduct established by this article of the charter or by ordinance shall be grounds for impeachment of elected officers and for the removal from office or from employment of all other officers and employees. The appointing authority may, upon the recommendation of the ethics commission, reprimand, put on

(continued . . .)

Rule of Professional Conduct 8.4(g)[4] applies to Katherine Kealoha as an attorney. *Id.* at 3. But the *only* bearing such statutes, regulations, and rules have is whether "the fear of being discharged under [them] for refusal to answer on the one hand and the fear of self-incrimination on the other was a choice between the rock and the whirlpool which made the statements products of coercion in violation of the Fourteenth Amendment." *Garrity*, 385 U.S. at 496 (footnote and quotation marks omitted). The mere existence of these statutes, regulations, and rules without more is not enough to convert voluntary statements into coerced ones.

Further, the assertion by the Kealohas — that the Executive Director of the Commission at the time the statements were made was aware that HRS § 78-9 required employees of the State of Hawaii and the City and County of Honolulu

---

probation, demote, suspend or discharge an employee found to have violated the standards of conduct established by this article of the charter or by ordinance. The ethics commission may also impose civil fines established by ordinance for violations of the standards of conduct committed by elected and appointed officers and employees of the city with significant discretionary or fiscal power as determined by ordinance.

[4] Hawaii Rule of Professional Conduct 8.4(g) provides:

It is professional misconduct for a lawyer to:
. . .
(g) fail to cooperate during the course of an ethics investigation or disciplinary proceeding.

(continued . . .)

to answer questions — is beside the point.[5]  *See* ECF No. 309-1 at 4 (citing Kealohas' Ex. A, ECF No. 337).  This voluntariness inquiry must focus on what information was imparted to the Kealohas, and, in particular, whether they were required to waive their privilege against self-incrimination.

Finally, there is simply no evidence that the statements made by Katherine or Louis Kealoha to the Commission were involuntary.  As the United States points out, the Kealohas' civil attorney sent a letter to the Commission on behalf of his clients that refused to answer some of the Commission's questions.  *See* ECF No. 348 at 1-2; *see, e.g.*, Def.'s Ex. D, ECF No. 337-3.  Likewise, the Kealohas have presented no evidence that they either: (1) were threatened with losing their jobs if they refused to make a statement; or (2) thought that they would lose their jobs if they refused to make a statement.

///

///

///

///

---

[5]  And, in any event, HRS § 78-9 appears inapplicable.  First, it only applies to the failure to make statements "after lawful notice or process," and there is no evidence before the court that either Kealoha was subject to such notice or process.  And second, the statute by its very language does not apply if doing so would be unconstitutional.

(continued . . .)

## III. CONCLUSION

For the foregoing reasons, Katherine Kealoha and Louis Kealoha's Motion to Suppress Statements and Evidence is DENIED without prejudice.[6]

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 12, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Kealoha, et al.*, Cr. No. 17-00582 JMS, Order Denying without Prejudice Katherine Kealoha and Louis Kealoha's Motion to Suppress Statements and Evidence, ECF No. 309

---

[6] The Motion is denied without prejudice based on defense counsels' assertion that the United States recently provided additional discovery relating to the Commission's investigation. Should counsel determine that a *Garrity* motion could be renewed based on this discovery, they must seek court permission to do so.

9