IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 17-00582 JMS-RLP |
|---|---|
| Plaintiff, | ORDER DENYING KATHERINE AND LOUIS KEALOHAS' MOTION TO DISMISS THE INDICTMENT, ECF NO. 312, AND DENYING RELATED JOINDERS, ECF NOS. 364, 365 |
| vs. | |
| KATHERINE P. KEALOHA (1); LOUIS M. KEALOHA (2); DEREK WAYNE HAHN (3); MINH-HUNG NGUYEN (4); GORDON SHIRAISHI (5); and DANIEL SELLERS (6), | |
| Defendants. | |

**ORDER DENYING KATHERINE AND LOUIS KEALOHAS' MOTION TO DISMISS THE INDICTMENT, ECF NO. 312, AND DENYING RELATED JOINDERS, ECF NOS. 364, 365**

## I. INTRODUCTION

Defendants Katherine Kealoha and Louis Kealoha (collectively, "Kealohas") filed a Motion to Dismiss the Indictment[1] on January 11, 2019, based on allegations of prosecutorial misconduct in grand jury proceedings. ECF Nos. 312, 312-1. The government filed its Response in Opposition to the Motion

---

[1] In fact, the operative Indictment is a First Superseding Indictment, returned by the grand jury on March 22, 2018. ECF No. 164. For ease of reference, the court will refer to the First Superseding Indictment as "the Indictment."

to Dismiss the Indictment on January 25, 2019. ECF No. 344. On January 31, 2019, both Defendant Derek Wayne Hahn ("Hahn") and Defendant Minh-Hung Nguyen ("Nguyen") filed Joinders in the Motion to Dismiss the Indictment. ECF Nos. 364, 365. A hearing was held on February 11, 2019.

Because the court finds no prosecutorial misconduct that would warrant dismissal of the Indictment, the court DENIES: (1) Kealohas' Motion to Dismiss the Indictment; (2) Hahn's Joinder; and (3) Nguyen's Joinder.

## II. **DISCUSSION**

**A.     Legal Framework**

A federal court may dismiss an indictment for either: (1) constitutional error; or (2) under the exercise of its inherent supervisory authority, based on (with some limitations) its own "procedural rules not specifically required by the Constitution or the Congress." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) (internal citation and quotation marks omitted); *see also United States v. Caruto*, 663 F.3d 394, 397 (9th Cir. 2011). Generally, however, an indictment valid on its face cannot be challenged on the ground that the grand jury acted on inadequate or incompetent evidence.[2] *United*

---

[2] Neither the Kealohas, Nguyen, nor Hahn claim that the Indictment is invalid on its face.

*States v. Calandra*, 414 U.S. 338, 343-45 (1974); *United States v. Renzi*, 651 F.3d 1012, 1027 (9th Cir. 2011).

One ground for dismissal of an indictment for constitutional error is a due process violation based on outrageous government conduct, which requires that "defendants . . . show conduct that violates due process in such a way that it is so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011) (internal citation and quotation marks omitted). "The defense is therefore limited to extreme cases in which the government's conduct violates fundamental fairness." *Id.* (internal citation and quotation marks omitted).

Dismissal of an indictment under the court's inherent supervisory authority "is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256 (citation and internal editorial marks omitted); *see also United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010). This standard requires a harmless-error inquiry unless "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia*, 487 U.S. at 257

3

(listing two examples of structural error: *Vasquez v. Hillery*, 474 U.S. 254 (1986), where there was racial discrimination in grand juror selection; and *Ballard v. United States*, 329 U.S. 187 (1946), where women were excluded from the grand jury).

**B.     Application**

The Kealohas argue that an Assistant United States Attorney ("AUSA") engaged in misconduct during grand jury proceedings by having an FBI agent inform the grand jury that Gerard Puana ("Puana")[3] had passed a polygraph examination. ECF No. 312-1 at 2. The Kealohas also essentially argue that the AUSA engaged in misconduct when the AUSA "allowed" a grand juror to ask whether Katherine Kealoha's grandmother's home was foreclosed upon. *See* ECF No. 312-1 at 3. In his joinder, Hahn further argues that the government perpetuated its misconduct by including information about the polygraph results in Hahn's and Nguyen's Criminal Complaints. ECF No. 364 at 2.[4]

///

///

---

[3] Among other things, the Indictment alleges that the Kealohas, Hahn, Nguyen, and Gordon Shiraishi conspired to frame Gerard Puana for stealing the Kealohas' mailbox. *See* First Superseding Indictment, ECF No. 164.

[4] Nguyen adopts the arguments of the Kealohas and Hahn, and does not provide any additional arguments. *See* ECF No. 365.

### 1. *Polygraph Evidence*

Under the test first articulated in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), the Ninth Circuit has historically "expressed [its] hostility to the admission of unstipulated polygraph evidence . . . [which] culminated in the adoption of a 'bright line rule' excluding all unstipulated polygraph evidence offered in civil or criminal trials." *United States v. Cordoba*, 104 F.3d 225, 227 (9th Cir. 1997) ("*Cordoba I*") (citations omitted). However, after *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) found that Federal Rule of Evidence 702 (and not *Frye*) governed admission of scientific expert testimony, the Ninth Circuit held that "[t]he per se *Brown* rule excluding unstipulated polygraph evidence [was] inconsistent with the 'flexible inquiry' assigned to the trial judge by *Daubert*." *Cordoba I*, 104 F.3d at 227. Subsequently, a number of district courts have conducted this "flexible inquiry" and excluded polygraph evidence at trial, and the Ninth Circuit has affirmed those rulings. *See, e.g.*, *United States v. Seideman*, 485 F. App'x 190, 194 (9th Cir. 2012) (unpublished); *United States v. Benavidez-Benavidez*, 217 F.3d 720, 725 (9th Cir. 2000); *United States v. Cordoba*, 194 F.3d 1053, 1063 (9th Cir. 1999) ("*Cordoba II*").

That said, the Federal Rules of Evidence do not apply in the context of grand jury proceedings, except for privilege protections. *See* Fed. R. Evid.

5

1101(d)(2). Accordingly, neither the old "bright line" rule nor *Daubert* applies here. *See Brown v. Darcy*, 783 F.2d 1389, 1394, 1396 n.13 (9th Cir. 1986), *overruled by Cordoba I*; *Daubert*, 509 U.S. at 587-88. Further, federal courts have, at least in some instances, allowed the results of polygraph examinations to be presented to grand juries. *See* 1 Fed. Grand Jury § 7:14 (2d ed.) ("[A] grand jury can hear evidence that could not be admitted at trial. Grand juries have, for example, been allowed to know results of a polygraph examination, evidence that is clearly inadmissible at trial.") (collecting cases).[5]

Here, the Puana polygraph examinations were only mentioned by the prosecutor at one point in the grand jury proceeding. The AUSA examined the witness, an FBI Special Agent, as follows:

> [AUSA:]   And Mr. Puana has denied that he was the person in the video, correct?
> [Witness:]   Yes.
> [AUSA:]   And he was also subject to a polygraph examination in which his denial, Mr. Puana saying I'm not the person in the video, satisfied the polygraph examiner, correct?

---

[5] The Kealohas cite one case — *United States v. McDonald*, 61 F.3d 248, 253 (4th Cir. 1995), *overruled on other grounds by United States v. Wilson*, 205 F.3d 720 (4th Cir. 2000) — finding that it was improper for prosecutors to present polygraph results to a grand jury. Regardless, *McDonald* relies on a prior case that only prohibits reference to polygraph tests at trial, and ultimately did not dismiss the indictment because of "lack of prejudice to [the defendant] and the dearth of evidence indicating bad faith on the government's part." *Id.* at 253-54.

6

| [Witness:] | Yeah, that's correct. |
| [AUSA:] | And although the polygraph examinations are not used in court they can be useful to the FBI and other investigators in determining the credibility of a witness. Isn't that true? |
| [Witness:] | Yes. |

Kealohas' Ex. A at 40:25-41:11:, ECF No. 339.

Ultimately, the court need not answer whether a prosecutor can present the results of a polygraph examination to a grand jury. The answer to that question, at best, is unclear. And given this uncertainty, the use of this evidence in the grand jury does not, and cannot, rise to the level of prosecutorial misconduct. That is, the presentation of evidence that may or may not be admissible before a grand jury certainly is not "so grossly shocking and so outrageous as to violate the universal sense of justice" or an "extreme case[] in which the government's conduct violates fundamental fairness." *Stinson*, 647 F.3d at 1209 (internal citation and quotation marks omitted). Further, the Kealohas have failed to make any factual showing that the admission of the polygraph test result had any impact, let alone a substantial one, on the grand jury's decision to indict. Instead, they essentially ask the court to speculate that because the polygraph examination results were provided to the grand jury, that testimony must have influenced the grand jury's decision to indict to the degree required for the court to exercise its

supervisory authority. *Bank of Nova Scotia*, 487 U.S. at 256. But no such evidence has been provided to the court.[6]

## 2. *Foreclosure Evidence*

The Kealohas also argue that there was prosecutorial misconduct when "the prosecutor allowed a grand juror to tell a witness that Ms. Kealoha's grandmother's house had been foreclosed on." ECF No. 312-1 at 3. They also argue that the AUSA should have corrected "this false statement." *Id.* The court disagrees.

The Kealohas' argument relies on only the following exchange during the grand jury proceedings:

| | |
|---|---|
| [AUSA:] | Any questions for this witness? Sir. |
| [Witness:] | Yes. |
| [Grand Juror:] | The home was foreclosed on; is that correct? |
| [Witness:] | Which home was that? |
| [Grand Juror:] | The one that was — the grandmother's home. |
| [Witness:] | The grandmother's home. Oh, I didn't know that. |
| [Grand Juror:] | Okay. |

Kealohas' Ex. B at 23:13-23, ECF No. 339-1.

---

[6] For the same reasons, the court also finds that the government's inclusion of information about the polygraph examination in Hahn's and Nguyen's Criminal Complaints does not rise to the level of prosecutorial misconduct. *See* ECF No. 364 at 2; Hahn's Ex. A, ECF No. 364-1; Hahn's Ex. B, ECF No. 364-2.

Based on this exchange, it is far from clear that the grand jury was in fact mistaken about whether Katherine Kealoha's grandmother's house was foreclosed upon. Nowhere does the grand juror state that he or she knew that the grandmother's house was foreclosed upon, and the witness clearly stated that she "didn't know" about the foreclosure. *See id.* Also, the AUSA had no duty to interfere with an appropriate question from the grand juror. *See Calandra*, 414 U.S. at 344 ("A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed. Such an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors." (citations and quotation marks omitted)). As a final matter, the Kealohas fail to explain why information about a foreclosure of the grandmother's house would impact the grand jury investigation.

Accordingly, the court finds no basis to dismiss the Indictment for a violation of constitutional due process or under the court's inherent supervisory power.[7]

---

[7] Although not dispositive, the Kealohas do not cite to the proceedings before the grand jury that returned the operative Indictment. The Kealohas cite to polygraph examination testimony that was presented to Grand Jury 15-1. *See* Def.'s Ex. A at 40:25-41:11, ECF No. 339. Grand jury records filed with the clerk and available to the public show that the initial Indictment was returned by Grand Jury 15-1 on October 19, 2017. But the operative Indictment,
(continued . . .)

## III. CONCLUSION

For the foregoing reasons, Katherine P. Kealoha's and Louis M. Kealoha's Motion to Dismiss the Indictment is DENIED; Derek Wayne Hahn's Joinder is DENIED; and Minh-Hung Nguyen's Joinder is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 21, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Kealoha, et al.*, Cr. No. 17-00582 JMS, Order Denying Katherine and Louis Kealohas' Motion to Dismiss the Indictment, ECF No. 312, and Denying Related Joinders, ECF Nos. 364, 365

---

the First Superseding Indictment, was returned by Grand Jury 17-1 on March 22, 2018. No evidence has been presented to the court, one way or the other, as to whether the results of the polygraph examination were also presented to Grand Jury 17-1.