IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KATHERINE P. KEALOHA (1),<br>LOUIS M. KEALOHA (2),<br>DEREK WAYNE HAHN (3),<br>MINH-HUNG NGUYEN (4), and<br>GORDON SHIRAISHI (5),<br><br>Defendants. | CR NO. 17-00582-JMS<br><br>MEMORANDUM OF LAW |

## MEMORANDUM OF LAW

### I. INTRODUCTION

Defendants KATHERINE P. KEALOHA, by and through counsel, Cynthia A. Kagiwada, and LOUIS M. KEALOHA, by and through counsel Rustam A. Barbee (collectively the "Kealohas"), and hereby move this Honorable Court for an order prohibiting the government from introducing the following evidence as untimely produced and/or irrelevant:

(1) The expert witness reports and anticipated testimony of David Oleksow (Forensic Document Examiner), disclosed by the government on February 7, 2019 and attached as **Exhibit "A;"**

(2) The expert witness reports and anticipated testimony of Thomas Woodard (FBI Video Communications Specialist), disclosed by the

(2) government on March 1, 2019 and attached as **Exhibit "B;"**

(3) The expert witness reports and anticipated testimony of Edwin Nam (Supervisory Special Agent), disclosed by the government on March 27, 2019 and attached as **Exhibit "C;"**

(4) The expert witness reports and anticipated testimony of Dr. Patricia L. Blanchette (Geriatric Physician), disclosed by the government on April 11, 2019 and attached as **Exhibit "D;"**

(5) The expert witness reports and anticipated testimony of Noel Herold (FBI Supervisory Agent), Lisa Diercks (FBI Computer Scientist/Forensic Examiner) and/or any other Computer Scientist/Forensic Examiner, Mark Gonyea (FBI Digital Forensic Examiner), disclosed by the government on April 19, 2019 and attached as **Exhibit "E;"**

(6) The expert witness reports and testimony of Mark Owen (former Servco Lexis Assistant Service Manager and Carly Lum (FBI Staff Operations Specialist), disclosed by the government on May 2, 2019 and attached as **Exhibit "H;"**

(7) Photographs of Defendant Bobby Nguyen allegedly taken in June 2013, disclosed by the government on April 26, 2019 and attached as **Exhibit "J;"**

(8) Reports, emails, and a manual regarding Notary Publics in Hawaii, disclosed by the government on April 26, 2019 at attached as **Exhibit "K;"**

(9) The expert reports, charts and testimony of Laurice Otsuka (FBI special agent and forensic accountant) disclosed by the government on May 7, 2019 and attached as **Exhibit "M."**

The Court should exclude all of this evidence because the government only recently produced it to the defense. Should this untimely produced evidence be allowed, the Kealohas would suffer severe prejudice in their ability to introduce relevant evidence and present adequate defenses at trial. Further, a substantial

2

portion of the government's untimely disclosed evidence (the Woodard, Nam, Blanchette, Herold, Diercks, Gonyea, Owen, and Lum evidence) was disclosed as improper expert evidence, in violation of both Fed. R. Evid. 702 and Fed. R. Crim. P. 16(a)(1)(G).  In addition, some of this evidence is irrelevant pursuant to Fed. R. Evid. 401 or 404 or has such limited probative value that is substantially outweighed by undue prejudice pursuant to Fed. R. Evid. 403.   Thus, this motion should be granted.

## II. **RELEVANT BACKGROUND**

The prosecution team started its investigation into this case four years ago, beginning in 2015.  More than two years after the investigation started, on October 19, 2017, the government obtained an indictment against six defendants, Katherine P. Kealoha, Louis M. Kealoha, Derek Wayne Hahn, Minh-Hung Nguyen, Gordon Shiraishi, and Daniel Sellers.  *See* ECF No. 17.  On March 29, 2018, the government obtained the First Superseding Indictment against the six defendants.  *See* ECF No. 164.  On May 5, 2018, this Court, through its Order Regarding Severance Motions and Motion to Strike Surplusage [ECF No 232], ("Severance Order"), ordered that Counts 1-11 be severed from Counts 12-23 of the First Superseding Indictment for separate trials.  *See id.*  Subsequently, the government obtained a Second Superseding Indictment on May 24, 2018.  [ECF No. 243], which duplicated identical charges from the First Superseding

Indictment (Counts 12-23), now identified as Counts 1-12 in the Second Superseding Indictment. A jury trial on Counts 1-11 of the First Superseding Indictment against the Kealohas and other named defendants is scheduled to commence on May 13, 2019.

Between November 17, 2017 and July 12, 2018, the government produced extensive discovery including over 250,000 pages of documents, numerous media and audio files, photographs and other materials. *See* Declaration of Counsel ("Declaration"). By July 12, 2018, the government had produced ten "rounds" of discovery, amounting to approximately 90 GB of data. *See id.*[1] Sometime between May 2018 and July 2018, Assistant United States Attorney Michael Wheat indicated to defense counsel that the prosecution had produced all discovery for this case, with the exception of discovery involved in ongoing investigations. *See id.* Subsequent to Wheat's representation, the prosecution produced ten (10) more rounds of discovery between December 14, 2018 up to May 7, 2019. The additional discovery, designated as Rounds 10-19 consisted of approximately

---

[1] As of July 12, 2018, the government had produced discovery that it labeled as Rounds 1 through 9. However, the government did not initially produce some of the discovery noted on its index for Round 1. *See* Declaration of Counsel. Upon request by defense counsel, the government produced the missing discovery from Round 1 and labeled it Round 1.2. *See id.*

17.17 GB of data.[2] Reviewing and organizing the discovery has taken copious amounts of the defense team's time. *See id.* Weeks before trial is to commence in mid-May 2019, the government continues to improperly and untimely produce documents and information that it intends to use at trial, in turn, severely prejudicing the defense's rights to adequately prepare and present defenses. *See id.*

This court has previously stated that it would exclude late-produced evidence. At a status conference on January 29, 2019, this court indicated that it would exclude evidence that was the result of late-produced discovery but indicated that the defense should file a motion as necessary. *See id.* In addition, even after the court granted the motion to continue the trial to the present date of May 13, 2019, the government represented at the March 7, 2019 status conference that it had provided both notice of all Fed. R. Evid. 404(b) evidence as well as notice of all of the government's experts. *See id.*

As part of its discovery production during the last two months, the government improperly and untimely disclosed to the defense, the following proposed witness testimony and other evidence:

- **On March 1, 2019**, the government provided notice of the proposed reports, anticipated testimony, and curriculum vitae of Thomas Woodard, a purported "Video Communications Specialist" whom the government claims may testify on issues related to the video surveillance hard drives produced

---

[2] Additionally, the Special Filter United States Attorney produced approximately 3.5 GB of data on January 25, 2019.

by HPD ("**Woodard evidence**"). Although the government claimed "Woodward's testimony would not be covered by Fed. R. Evid. 702", they provided his curriculum vitae to the defense.
*See* **Exhibit "B."**

- **On March 27, 2019,** the government provided notice of new expert reports, and supplemental anticipated testimony of Edwin Nam, FBI Supervisory Special Agent, who the government intends to call to explain historical cell site analysis of Gerard Puana's cell phone. *See* **Exhibit "C."**

- **On April 11, 2019**, the government provided notice of the proposed expert reports, anticipated testimony, and curriculum vitae of Dr. Patricia L. Blanchette, whom the government claims may testify "about her observations and evaluations of Florence Puana in 2015"("**Blanchette evidence**"). *See* **Exhibit "D."**

- **On April 19, 2019**, the government disclosed the proposed reports, anticipated testimony, and curriculum vitae of Noel Herold, FBI Supervisory Special Agent, who purportedly "performed the forensic enhancement of the subject video files, which were originally produced by the Honolulu Police Department" (**"Herold evidence"**). The government also disclosed the proposed report and anticipated testimony of Lisa Diercks, FBI Computer Scientist, whom the government represents will provide her analysis and conclusions regarding the "Alison Leewong" Facebook material ("**Diercks evidence**").[3] Finally, the government disclosed the proposed report and anticipated testimony of Mark Gonyea, FBI Senior Digital Forensic Examiner, who purportedly extracted and received data from an HPD electronic device used by Louis Kealoha ("**Gonyea evidence**").[4]

---

[3] The government claims the information used by Dierks to form her expert opinion on April 15, 2019, was previously produced in discovery in December 2017, designated as KEALOHA-16MC0366-FACEBOOK-AWONG and KEALOHA-16MC0366-FACEBOOK-AWONG-000017, and attached as **Exhibits "F" and "G"** respectively.

[4] The government claims that Gonyea previously extracted data from an HPD electronic device used by Louis Kealoha, which was previously produced in discovery at KEALOHA-LK-HD-000001. *See* **Exhibit "H"** (Discovery Production 13 index page).

6

*See* **Exhibit "E."**

- **On May 2, 2019**, the government provided its notice of the reports, anticipated testimony, and resume of Mark Owen, former Assistant Service Manager at Servco Lexus Honolulu ("**Owen evidence**"). The government also disclosed the reports, anticipated testimony, and curriculum vitae of Carly Lum, FBI Staff Operations Specialist, whom the government claims will testify "to phone toll records obtained by the United States in this matter, and summary phone charts created for those records" ("**Lum evidence**").[5] The government claims Lum's anticipated testimony does not fall within the scope of Fed. R. Evid. 702. *See* **Exhibit "I."**

- **On April 26, 2019**, the government produced photographs of Defendant Bobby Nguyen allegedly taken in June 2013 at the Kealohas' Kahala residence ("**Nguyen photos**"). *See* **Exhibit "K."** The government also produced reports, emails, and a manual regarding Notary Publics in Hawaii, disclosed by the government on April 26, 2019. *See* **Exhibit "L."**

- **On May 7, 2019,** the government produced expert reports, charts and anticipated testimony of Laurice Otsuka (FBI special agent and forensic accountant). *See* **Exhibit "M."**

On the eve of trial, the government continues its improper gamesmanship by producing late discovery and notice of a plethora of new expert witnesses. Such tactics violate the defendants' constitutional rights to due process and to prepare an adequate trial defense.

---

[5] The government claims that Lum will "testify to phone toll records obtained by the United States in this matter, and summary charts previously created from those records". The draft phone toll summary charts which the government claims may testify to were produced by the government on April 25, 2019 and attached as **Exhibit "J"**.

## III. ARGUMENT

### A. The Government's Proposed Evidence Should Be Excluded as Untimely Disclosed and Improper Expert Opinion Evidence

The Court should exclude the government's untimely evidence (produced during the period of March 2019 to May 2019) pursuant to Fed. R. Crim. P. 16. Should this untimely produced evidence be allowed, the Kealohas would suffer sever prejudice in their ability to introduce relevant evidence and present adequate defenses at trial. Moreover, the government also violated Fed. R. Evid. 702 because a substantial portion of the government's untimely produced evidence (the supplemental Nam, Woodard, Blanchette, Herold, Diercks, Gonyea, Owen, and Lum evidence) is expert evidence, and the government has not provided "reasonable notice" as required by Fed. R. Evid. 702. Thus, this motion should be granted.

The Constitution guarantees a criminal defendant a meaningful opportunity to introduce relevant evidence in his/her defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Should this right be compromised by the government's untimely disclosure of proposed evidence to the defense, the district court has the power to remedy prejudice suffered by the accused. *United States v. Roybal*, 566 F.2d 1109 (9th Cir. 1977). Exclusion of the government's belatedly produced evidence to the defense is a proper remedy. *United States v. Talbot*, 51 F.3d 183 (9th Cir. 1995). When a criminal defendant argues that the prosecution disclosed

8

evidence so late as to violate due process, "we consider the prosecution's reasons for late disclosure, ... and whether the defendant had an opportunity to make use of the disclosed material." *LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir.1987) (internal citation omitted).

The government's untimely disclosure of expert witness evidence further warrants exclusion pursuant to Fed. R. Crim. P. 16. Fed. R. Crim. P. 16(a)(1)(G) provides that, "the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(G). Additionally, this summary must include the "bases and reasons for those opinions, and the witnesses qualifications." The purpose of this rule is to "provide defendant with an opportunity to challenge the expert's opinion and qualifications." *United States v. Yagi,* No. CR-12-0483 EMC, 2013 WL 10570994, at *16 (N.D. Cal. Oct. 17, 2013).

Fed. R. Crim. P. 16(a)(1)(G) does not include specific timing requirements, however, the advisory committee notes state that it is "expected that the parties will make their requests and disclosures **in a timely fashion**." Advisory Committee Notes to 1993 Amendment of Fed. R. Crim. P. 16 (emphasis added). Where the government has failed to timely disclose evidence, the court may,

among other things, exclude the undisclosed evidence. *See* Fed. R. Crim. P. 16(d)(2).

Additionally, the trial court may exclude an expert witness on account of an untimely disclosure of the witness. *See United States v. W.R. Grace*, 526 F.3d 416 (9th Cir. 2008); *see also United States v. Garcia*, 730 F. Supp.2d 1159 (C.D. Cal. July 30, 2010) (excluding government's untimely disclosed expert witness based on violation of discovery order); *Yagi,* 2013 WL 10570994, at *16 (excluding government's proposed expert witness based on government's failure to comply with Rule 16 disclosure less than a month before trial).

Here, all of the government's produced evidence during the last two months is untimely and should be excluded pursuant to Fed. R. Crim. P. 16. In addition, the government's late identification of evidence and proposed expert witness testimony (the Nam, Woodard, Blanchette, Herold, Diercks, Gonyea, Owen, and Lum evidence) also violated the requirement of reasonable notice pursuant to Fed. R. Evid. 702. All of this evidence must be excluded in order to protect the Kealoha's constitutional rights to due process and to prepare an adequate defense.

While the government concedes that the Oleksow, Dry, and Nam evidence (disclosed on February 7, 2019) qualifies as expert opinion evidence under Fed. R. Evid. 702, it curiously maintains that the Woodard evidence (disclosed on March 1, 2019), supplemental Nam evidence (disclosed on March 27, 2019), the

Blanchette evidence (disclosed on April 11, 2019), the Herold, Diercks, and Gonyea evidence (disclosed on April 19, 2019), the Owen and Lum evidence (disclosed on May 2, 2019) and the Otsuka evidence (disclosed on May 7, 2019) may not be subject to Fed. R. Evil 702 but also indicates that, "we are providing you with this notice out of an abundance of caution." *Compare* Exhibit "A" *with* Exhibits "B," "C," "D," "E," and "I."

Contrary to the government's contentions, all of the above evidence is expert witness evidence improperly and untimely disclosed by the government. *See* Fed. R. Evid. 702; Fed. R. Crim. P. 16 and Advisory Committee Notes. Under Fed. R. Evid. 702, an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702. "A witness is qualified as an expert by knowledge, skill, experience, training, or education." *Id.; see also McDevitt v. Guenther*, 522 F.Supp.2d 1272, 1290–91 (D. Haw. 2007).

All of these late identified witnesses are professionals who possess the specialized "knowledge, skill, experience, training, and education" which qualifies them as possible experts, as highlighted below:

- Woodard is a purported "Video Communications Specialist" whom the government claims may testify on issues related to the video surveillance hard drives produced by HPD.
  *See* **Exhibit "B."**

- The government has already identified Nam as an expert witness but provided late disclosure of Nam's possible testimony on issues related to Gerard Puana's cell phone analysis.  *See* **Exhibit "C."**

- Dr. Blanchette is a geriatric physician whom the government claims may testify "about her observations and evaluations of Florence Puana in 2015.  *See* **Exhibit "D."**

- Herold is an FBI Supervisory Special Agent who performed the forensic enhancement of video files which were originally produced by the Honolulu Police Department.  *See* **Exhibit "E."**

- Diercks is an FBI Computer Scientist whom the government represents will provide her analysis and conclusions regarding the "Alison Leewong" Facebook material.  *See* **Exhibit "E."**

- Gonyea is FBI Senior Digital Forensic Examiner who purportedly extracted and received data from an HPD electronic device used by Louis Kealoha  *See* **Exhibit "E."**

    Owen is a former Assistant Service Manager at Servco Lexus Honolulu, who, based on his training and experience, will opine that the vehicle depicted in the June 21, 2013 surveillance videos was a Lexus sedan. *See* **Exhibit "I."**

- Lum is an FBI Staff Operations Specialist, whom the government claims will testify "to phone toll records obtained by the United States in this matter, and summary phone charts created for those records."  *See* **Exhibit "I."**

- Otsuka is an FBI Forensic Accountant, whom the government claims will testify "to relevant summary charts and to introduce summaries of voluminous records, namely various bank accounts, credit accounts and financial records."  *See* **Exhibit "M."**

Further, the government attempts to justify the late production by referring back to other evidence that was produced earlier in discovery.  While it is true

these documents were produced earlier the reports, expert evidence, and proposed testimony were not produced until the last two months. Thus, the government's late production does not provide notice which would allow the Kealohas to present an adequate defense.

Accordingly, the Kealohas respectfully request that the court exclude all of the Woodard, Nam (supplemental), Blanchette, Herold, Diercks, Gonyea, Owen, Lum and Otsuka evidence as improperly disclosed expert evidence. *See W.R. Grace*, 526 F.3d 416; *Yagi*, 2013 WL 10570994 at *16. Further, the Kealohas respectfully request that the court exclude any further expert evidence still being produced or to be produced in the future.[6]

### B. The Government's Proposed Evidence Should Further Be Excluded As Irrelevant and/or Improper Character Evidence

Much of the untimely produced evidence should also be excluded as irrelevant.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The government carries the burden of showing how the proffered evidence is relevant to one or more issues in the case

---

[6] As recently as May 7, 2019, the government produced for the first time forensic accounting evidence by FBI Special Agent Laurice Otsuka. *See* **Exhibit "M."** A cursory review of this evidence reveals that it is also untimely produced expert evidence in violation of Fed. R. Evid. 702 and Fed. R. Crim. P. 16. *See id.*

and must precisely articulate its evidentiary hypothesis. *See United States v. Mermanesh*, 689 F.2d 822, 830 (9th Cir. 1982). In addition, prior bad acts are not admissible to show propensity or bad character, although they may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. Fed. R. Evid. 404 (b)(1) and (2); *United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013). The courts employ a four-part test to determine the admissibility of Rule 404(b) evidence:

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.
>
> *Id.*; *see United States v. Rendon-Duarte*, 490 F.3d 1142, 1144 (9th Cir. 2007).

The government is attempting to introduce three types of irrelevant evidence: (1) Evidence and expert testimony related to "Alison Lee Wong;" (2) Evidence and expert testimony related to Florence Puana's competency evaluation in 2015; and (3) Evidence and expert testimony related to the severed counts (including the bank fraud charges). The government cannot meet its burden of showing how the proffered evidence is relevant to one or more of the issues in the case. *See Mermanesh*, 689 F.2d at 830.

First, the proposed evidence and expert testimony by David Oleskow, *see* **Exhibit "A,"** Lisa Diercks, *see* **Exhibit "E,"** and the notary public evidence, *see* **Exhibit "L,"** relates to "Alison Lee Wong." However, allegations regarding "Alison Lee Wong" are completely irrelevant to the charges in this case regarding conspiracy, making false statements, and obstructing justice. *See* First Superseding Indictment filed March 29, 2018. The evidence does not tend to prove a material point with respect to the conspiracy or other charges in the instant case. *See* Fed. R. Evid. 401; *Ramos-Atondo*, 732 F.3d at 1123. Even under the government's theory of needing to prove a financial motive, the evidence relating to "Alison Lee Wong" is tangential at best. According to the government, "Alison Lee Wong" purportedly notarized the Gerard K Puana Trust in January 2009. But even Gerard Puana never disputed the existence of such a trust. Therefore, any evidence regarding "Alison Lee Wong" in the instant case is irrelevant or has tangential probative value at best. *See* Fed. R. Evid. 401.

In addition, the evidence regarding "Alison Lee Wong" is improper character evidence pursuant to Fed. R. Evid. 404. For example, in its April 19, 2019 disclosure to the defense, the government claims that Dierks, who issued her expert opinion on April 15, 2019, may testify about the "Alison Leewong" Facebook material, specifically, that the "cookie associated with both Allison and Katherine's accounts means that both of those accounts used the same browser on

15

the same machine", among other things. *See* **Exhibit "D"** at 2. Setting aside that this evidence is highly technical and specialized, any testimony about "Allison Leewong" and the government's claim Katherine Kealoha falsely created this identity for various purposes is improper prior bad act evidence under Fed. R. Evid. 404. This evidence also does not comport with the requirements of Fed. R. Evid. 404 (b).

Second, the government is producing Dr. Blanchette to provide expert testimony regarding Florence Puana's competency evaluation in 2015. Again, while the government apparently intends to offer this evidence to support its "financial motive" theory, the evidence is irrelevant to the conspiracy, false statement and obstruction charges in the instant case. *See* Fed. R. Evid. 401; *Ramos-Atondo*, 732 F.3d at 1123. At best, this evidence provides minimal probative value. *See* Fed. R. Evid. 401.

Third, to the extent that the government is attempting to introduce expert evidence and testimony by FBI forensic accountant Laurice Otsuka regarding charges that have been severed from this case, it is irrelevant. *See* Fed. R. Evid. 401; *Ramos-Atondo*, 732 F.3d at 1123. Further, this court has previously ruled that evidence regarding the bank fraud charges or the Taito charges may not be introduced in this case pursuant to Fed. R. Evid. 403. *See* Minute Order filed March 12, 2019 (ECF No. 501) March 12, 2019 Transcript at 45 (ECF No. 513).

Accordingly, all of the above-identified untimely evidence should also be excluded as irrelevant. See Fed. R. Evid. 401, 404.

### C. The Government's Proposed Evidence Should Further Be Excluded Because the Danger of Prejudice Substantially Outweighs Any Limited Probative Value

Assuming that the government could now show any minimal relevance to the above evidence, the court should exclude all of this evidence because the dangers arising from this evidence would substantially outweigh any minimal relevance.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; see Ramos-Atondo, 732 F.3d at 1123. "Because evidence of other crimes, wrongs, or acts carries with it the inherent potential to see the defendant simply as a bad person and then to convict because of who he is rather than what he did, a trial court must take appropriate care to see that this does not happen." See United States v. Curtin, 489 F.3d 935, 957 (9th Cir. 2007). "Relevance is a fairly coarse filter, and when evidence is minimally relevant, it is likely to be minimally probative as well." United States v. Wiggan, 700 F.3d 1204, 1213 (9 h Cir. 2012). Additionally, any decision regarding probative value must be influenced by the availability of other sources of

evidence on the point in question. *See id.* "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *See id.* (quoting *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992)).

The defense contends that the above evidence has no relevance to the offenses in the 2017 case. However, even if this court determines that there is any probative value, it is minimally probative at best. *See Wiggan*, 700 F.3d at 1213. Not only does the government have other more relevant sources on the point in question, but a very large risk exists that the introduction of evidence regarding Alison Lee Wong, Florence Puana's competency, and the additional fraud charges will confuse the issues and mislead the jury as well as result in a waste of time. *See id.*; Fed. R. Evid. 403. Finally, there is a very great danger that introduction of this evidence will be highly prejudicial against Ms. Kealoha and all of the other defendants. *See Wiggan*, 700 F.3d at 1213; Fed. R. Evid. 403. The government's introduction of salacious and unproven allegations of Ms. Kealoha's use of an allegedly fictitious person, as well as evidence of Ms. Puana's competency, and evidence of the other fraud charges severed from this case, would tend to influence and create bias by the jury against Ms. Kealoha as well as the other defendants. The introduction of this evidence may confuse the jury as to the actual offenses before the jury. Finally, there is a very great danger that introduction of this

evidence will be highly prejudicial, especially against Ms. Kealoha *See Wiggan*, 700 F.3d at 1213; Fed. R. Evid. 403.

## IV. **CONCLUSION**

Accordingly, in the interests of protecting the Kealohas' due process rights and their ability to prepare an adequate defense against the government's claims under both the Fifth and Sixth Amendments, the Kealohas respectfully request that the court grant this motion.

DATED: Kaneohe, Hawaii, May 8, 2019.

                              Respectfully submitted,

                              /s/ Cynthia A. Kagiwada
                            CYNTHIA A. KAGIWADA
                            Attorney for Defendant
                            KATHERINE P. KEALOHA

                              /s/ Rustam A. Barbee
                            RUSTAM A. BARBEE
                            Attorney for Defendant
                            LOUIS M. KEALOHA