

FD-302 (Rev. 5-8-10)

OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry    04/24/2019

On April 24, 2019, American Association of Notaries President Kal Tabbara (TABBARA) emailed FBI Special Agent Nicole Vallieres. The emails from TABBARA were as follows:

"On Apr 24, 2019 4:19 AM, Kal <kal@usnotaries.com> wrote:

Good morning Nicole,

I am waiting to hear back from my programmer David regarding your questions.
I also, emailed my programmer from 2008 to get his permission to provide you his information.

Regarding your last question about verifying notary purchases. We follow state laws and rules. Some states require vendors to receive copies of commission certificates before manufacturing notary stamps, some requires vendors to make an impression of the stamp a state approved form and returned to the state before issuing a notary stamp and some do not care.

Best Regards,

Kal Tabbara
President
American Association of Notaries
8811 Westheimer, Suite 207
Houston, Texas 77063
281-450-8380
kal@usnotaries.com

www.usnotaries.com"

"Hi Nicole,

Investigation on   04/24/2019   at   Kapolei, Hawaii, United States (Email)

File #                                                          Date drafted   04/24/2019

by   Nicole Vallieres

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

**EXHIBIT**

KEALOHA-REPORTS-037514

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  (U) Information Provided by Kal Tabbara  , On  04/24/2019  , Page  2 of 2


We summaries and update the laws periodically on this link https://www.notarypublicstamps.com/become-a-notary/hawaii/


Also the State of Hawaii has a notary handbook. See attached.

Hawaii does not have any requirements to provide documentations to the stamp vendor.


Best Regards,


Kal Tabbara

President

American Association of Notaries

9811 Westheimer, Suite 207

Houston, Texas 77063

281-450-8980

kal@usnotaries.com

www.usnotaries.com"


    TABBARA also provided an attachment of the Notary Manual website which will be maintained electronically as a 1A.

| | |
|---|---|
| **From:** | Kal <kal@usnotaries.com> |
| **Sent:** | Wednesday, April 24, 2019 12:18 PM |
| **To:** | Vallieres, Nicole L. (HN) (FBI) |
| **Cc:** | kal@usnotaries.com |
| **Subject:** | RE: One more |
| **Attachments:** | Notary-Manual-website-version.pdf |

Hi Nicole,

We summaries and update the laws periodically on this link https://www.notarypublicstamps.com/become-a-notary/hawaii/

Also the State of Hawaii has a notary handbook. See attached.

Hawaii does not have any requirements to provide documentations to the stamp vendor.

Best Regards,

Kal Tabbara
President
American Association of Notaries
8811 Westheimer, Suite 207
Houston, Texas 77063
281-450-8980
kal@usnotaries.com
www.usnotaries.com





**From:** Vallieres, Nicole L. (HN) (FBI) [mailto:nlvallieres@fbi.gov]
**Sent:** Wednesday, April 24, 2019 2:02 PM
**To:** Kal <kal@usnotaries.com>
**Subject:** RE: One more

1

KEALOHA-REPORTS-037516

Thank you for responding. What is the state law for Hawaii in providing documentation? Would that be recorded anywhere in your files?

On Apr 24, 2019 4:19 AM, Kal <kal@usnotaries.com> wrote:

Good morning Nicole,

I am waiting to hear back from my programmer David regarding your questions.
I also, emailed my programmer from 2008 to get his permission to provide you his information.

Regarding your last question about verifying notary purchases. We follow state laws and rules. Some states require vendors to receive copies of commission certificates before manufacturing notary stamps, some requires vendors to make an impression of the stamp a state approved form and returned to the state before issuing a notary stamp and some do not care.

Best Regards,

Kal Tabbara
President
American Association of Notaries
8811 Westheimer, Suite 207
Houston, Texas 77063
281-450-8980
kal@usnotaries.com
www.usnotaries.com

-----Original Message-----
From: Vallieres, Nicole L. (HN) (FBI) [mailto:nlvallieres@fbi.gov]
Sent: Monday, April 22, 2019 4:24 PM
To: Kal <kal@usnotaries.com>
Subject: One more
Importance: High

Sorry, one more question-

How does your company verify customer information for notary products? For example, can anyone order notary products or do you need proof of a notary license or certification?

Thank you

Nicole

-----Original Message-----
From: Vallieres, Nicole L. (HN) (FBI)
Sent: Monday, April 22, 2019 10:26 AM
To: Kal <kal@usnotaries.com>
Subject: questions

KEALOHA-REPORTS-037517

Importance: High

Kal,

Here are the questions we'd like for you to follow up on:

How does your Account numbering system work?

What is the date the account was created and how did you come to that conclusion?

What is the name, place of employment and contact number for the Programmer who knows where the purchase order for AAN are located?

Thank you!

Nicole Vallieres
Special Agent
FBI- Honolulu
Office: (808) 673-2850
Cell: (808) 271-8204

3

KEALOHA-REPORTS-037518

# NOTARY PUBLIC MANUAL



## STATE OF HAWAI'I

Department of the Attorney General
Notary Public Program
425 Queen Street
Honolulu, Hawai'i  96813

Website:  http://ag.hawaii.gov/notaries-public/

E-mail:  ATG.notary@hawaii.gov

Ph.  (808) 586-1216

NOT FOR RESALE

Revised January 2016

i

KEALOHA-REPORTS-037519

# Table of Contents

Page

Introduction

I. GENERAL INFORMATION
    Qualifications........................................    1
    Application............................................    1
    Appointment and Tenure.......................    1
    Rules...................................................    1
    Notarial Seal........................................    1
    Official Signature................................    2
    Filing Copy of Commission;
    Authentication of Acts......................    2
    Official Bond......................................    2
    Liabilities; Limitations on; Official Bond.....    2
    Notarial Record Book; Specifications;
    Copies as Evidence...........................    3
    Disposition of Notarial Record Books and
    Penalties............................................    3
    Notaries in Government Service...............    3

II. DUTIES AND LIABILITIES
    Definition............................................    4
    Why Documents Are Notarized.................    4
    Duties.................................................    4
    Obligations and Limitations....................    5
    Persons Who Are Unable To Sign..............    6
    Civil and Criminal Liability....................    6

i

KEALOHA-REPORTS-037520

# Table of Contents

Page

III. POWERS AND FUNCTIONS
        Jurisdiction............................................ 8
        Date of Notarial Act............................. 8
        Changes on Document.......................... 8
        Administering an Oath or Affidavit............ 8
        Taking an Acknowledgment..................... 10
        Notary Certificate................................ 12
        Fees Notaries May Charge....................... 13
        Fees Charged To Notaries....................... 14
        Notaries Public Revolving Fund................. 14

Disclaimer............................................ 15

Act 175 Relating to Fraud Prevention.......... 16

KEALOHA-REPORTS-037521

## Introduction

A Notary Public is a public officer whose functions include:

(1) administering oaths;
(2) witnessing the signing of documents;
(3) attesting to the identity of the signers of the document;
(4) noting protests; and
(5) taking acknowledgments of documents.

Although a notary public may be commissioned to perform services in connection with work for his/her employer, **the notary is** nonetheless **a public officer and as such is required to provide notarial service to the general public.**

A government notary whose fees and bond are waived, however, is limited by law to performing notarial services pertaining to the business of the government, except where the occasion is deemed by the head of the department of the governmental unit to be one of urgent necessity and convenience.

iii

KEALOHA-REPORTS-037522

# I. GENERAL INFORMATION

## Qualifications

In Hawaii, to be eligible for a notary public commission, the applicant must be:

1. A United States citizen, or a national or permanent resident alien of the U.S. who diligently seeks citizenship upon becoming eligible to apply for U.S. citizenship;
2. A Hawaii resident; and
3. At least 18 years old.

## Application

Application for a notary public commission is made on forms provided by the Attorney General. You may download an application from the Notary Program's website: http://ag.hawaii.gov/notaries-public/.

After approval of an applicant by the Attorney General, the applicant is required to take a written closed-book examination covering the statutory laws and administrative rules that apply to notaries public, as well as practical aspects of a notary's practice, and a notary's duties and responsibilities. The passing score is 80 percent.

## Appointment and Tenure

The Attorney General may, in the Attorney General's discretion, appoint and commission such number of notaries public for the State as the Attorney General deems necessary for the public good and convenience. The term of office of a notary public shall be four years from the date of the notary's commission, unless sooner removed by the Attorney General for cause after due hearing; provided that after due hearing the commission of a notary public may be revoked or otherwise disciplined by the Attorney General in any case where any change occurs in the notary's office, occupation, residence, or employment which in the Attorney General's judgment renders the holding of such commission by the notary no longer necessary for the public good and convenience. Each notary shall, upon any change in the notary's office, occupation, residence, or employment, report the same in writing to the Attorney General within thirty days of the change.

Each notary public shall be responsible for renewing the notary public's commission on a timely basis and satisfying the renewal requirements provided by law. The failure to renew a commission in a timely manner may cause the commission to be forfeited, if the Attorney General finds that the failure was done knowingly. The commission of a notary public is forfeited if the notary public knowingly fails to submit a completed renewal application, pay the renewal fee, or complete the processing and filing of a commission for renewal by the date of expiration of the notary public's commission. A failure to renew shall be deemed knowingly if notice of renewal is sent to the last address on file for the notary public and the notary public fails to complete all these requirements. Any notary seeking to restore the notary's forfeited commission more than one year from the date of expiration of the commission shall reapply as a new applicant for a notary public commission.

## Rules

The Attorney General, subject to chapter 91, Hawaii Revised Statutes (HRS), may prescribe such rules as the Attorney General deems advisable concerning the administration of chapter 456, HRS, the appointment and duties of notaries public, and the duties of other officers thereunder. The rules shall have the force and effect of law. Chapter 5-11, Hawaii Administrative Rules (HAR), the rules governing the practices and procedures of notaries commissioned in Hawaii, was adopted on May 5, 2008.

## Notarial Seal

Each notary is required to obtain, at the expense of the notary or the notary's company, and shall constantly keep either an engraved seal of office or a rubber stamp facsimile seal which shall be circular, not over two inches in diameter, with a serrated or milled edge border and clearly show, when embossed,

KEALOHA-REPORTS-037523

stamped, or impressed upon a document, **the notary's name** and **commission number**, and the words **"notary public"** and **"State of Hawaii"**. The notary public shall authenticate all the notary's official acts, attestations, certificates, and instruments therewith, and shall always add to an official signature the typed or printed name of the notary and a statement showing the date that the notary's commission expires. Upon resignation, death, expiration of term of office without reappointment, or removal from or abandonment of office, the notary public shall immediately deliver the notary's seal to the Attorney General for defacement or destruction. If any notary fails to deliver the seal within ninety days of the date of the notary's resignation, expiration of term of office without reappointment, or removal from or abandonment of office, or if the notary's personal representative fails to comply within ninety days of the notary's death, then the notary public or the notary's personal representative shall forfeit to the State not more than $200, in the discretion of the court, to be recovered in an action to be brought by the Attorney General on behalf of the State.

## Official Signature

A notary must sign the notary's official signature in the same manner as it appears on the notary's seal. For example, if the notary's name is "John Doe" on the notary's seal, he signs in the same form, i.e., "John Doe" and not "J. Doe". A notary must always add to the notary's official signature the date of expiration of the notary's commission as a notary public and a typed or legibly printed name of the notary below the notary's signature.

## Filing Copy of Commission;
## Authentication of Acts

Every notary, after being commissioned, must forthwith file a photocopy of the notary's commission, an impression of the notary's seal, and a specimen of the notary's official signature with the clerk of the circuit court of the circuit in which the notary resides. Each notary may also file these same documents with the clerk of any other circuit court. Thereafter, any clerk, when requested, shall certify to the official character and acts of any such notary whose commission, impression of seal, and specimen of official signature are on file with the clerk's office (a process called authentication). (Authentication is usually required when a document notarized by a local notary public is sent to another state or country. Such state or country may require evidence that the notary who notarized the document is a duly commissioned officer of the State of Hawaii.) Authentication is also done by the Office of the Lieutenant Governor.

## Official Bond

Each notary public forthwith and before entering upon the duties of the notary's office shall execute, at the expense of the notary or the notary's company, an official surety bond which shall be in the sum of $1,000. Each bond shall be approved by a judge of the circuit court of the circuit in which the notary resides.

The obligee of each bond shall be the State and the condition contained therein shall be that the notary public will well, truly, and faithfully perform all the duties of the notary's office which are then or may thereafter be required, prescribed, or defined by law or by any rule made under the express or implied authority of any statute, and all duties and acts undertaken, assumed, or performed by the notary public by virtue or color of the notary's office. The surety on any such bond shall be a surety company authorized to do business in the State. After approval, the bond shall be deposited and kept on file in the office of the clerk of the circuit court of the circuit in which the notary public resides. The clerk shall keep a book to be called the "bond record", in which the clerk shall record such data in respect to each of the bonds deposited and filed in the clerk's office as the Attorney General may direct.

## Liabilities; Limitations on; Official Bond

In the performance of a notarial act, a notary's liability shall be limited to a failure by the notary to perform properly the actions required for the jurat, acknowledgment, or other notarial act.

For the official misconduct or neglect of a notary public or breach of any of the conditions of the notary's official bond, the notary and the surety on the notary's official bond shall be liable to the party

-2-

KEALOHA-REPORTS-037524

injured thereby for all the damages sustained.  The party shall have a right of action in the party's own name upon the bond and may prosecute the action to final judgment and execution.

### Notarial Record Book; Specifications; Copies as Evidence

Every notary public shall record at length in a book of records all acts, protests, depositions, and other things, by the notary noted or done in the notary's official capacity.  For each official act, the notary shall enter in the book:

1.  The type, date, and time of day of the notarial act;

2.  The title or type and date of the document or proceeding;

3.  The signature, printed name, and address of each person whose signature is notarized and of each witness;

4.  Other parties to the instrument; and

5.  The manner in which the signer was identified.

All copies or certificates granted by the notary shall be under the notary's hand and notarial seal, and shall be received as evidence of such transactions.

The record book shall be bound with a soft cover and shall not exceed eleven inches in height and sixteen and one-half inches in width when fully opened.  The pages of the record book shall be consecutively numbered.  The notary public shall always provide and print legibly on the information page of each record book the notary public's name, business address, commission number, and commission expiration date, the book number, and the beginning and ending dates of the notarial acts recorded in that book.  The notary public shall always print legibly the notary public's name on the top left corner and the notary public's commission number on the top right corner of each set of pages of transactions in each record book.

### Disposition of Notarial Record Books and Penalties

The records of each notary public shall be deposited with the  Attorney General upon the resignation, death, expiration of each term of office, or removal from or abandonment of office.  If any notary fails to comply within ninety days of the date of the resignation, expiration of any term of office, or removal from or abandonment of office, or if the notary's personal representative fails to comply within ninety days of the notary's death, then the notary or the notary's personal representative shall forfeit to the State not less than $50 nor more than $500, in the discretion of the court, in an action brought by the Attorney General on behalf of the State.

### Notaries in Government Service

Except as otherwise provided for by law, the head of every department (which, as used in HRS Chapter 456, includes any department, board, commission, bureau, or establishment of the United States, or of the State, or any political subdivision thereof) may designate one or more subordinates to be a notary public who, upon duly qualifying and receiving a commission as a notary public in government service, shall perform, without charge, the services of a notary public in all matters of business pertaining to the State, any political subdivision thereof, or the United States.

Any provision of this chapter to the contrary notwithstanding, a subordinate so designated and qualified and commissioned as a **notary public in government service shall:**

1.  Be authorized to perform the duties of a notary public in one or more of the judicial circuits of the State as the Attorney General shall designate;

2.  Not be required to:

KEALOHA-REPORTS-037525

A.  Pay any fee to the clerk of any circuit court for filing a copy of the notary's commission;

B.  Pay any fee to the Attorney General for the issuance of the notary's commission or the renewal thereof; or

C.  Furnish and file an official bond unless that bond is required by the head of the department in which the notary is a subordinate, in which event, the expense of furnishing any such bond shall be borne by the department concerned; and

3.  Not demand or receive any fee for the notary's service as a notary public; provided that where the occasion, in the judgment of the head of the department, is deemed one of urgent necessity and convenience, the notary may, but shall not be compelled to, administer oaths or take acknowledgments in nongovernmental matters, for which services the prescribed fees shall be demanded and received as governmental realizations and deposited into the notaries public revolving fund established by HRS § 456-9.5, except that if that fund is terminated, the fees shall be deposited into the general fund of the State; provided further that with the prior written approval of the Attorney General, the notary public, upon paying the fees prescribed by law and upon executing, depositing, and filing at the notary's own expense, the required official bond, may demand or receive the fees prescribed by law for services rendered by the notary in matters not pertaining to such government business.

## II. DUTIES AND LIABILITIES

### Definition

A notary is defined as a "public officer whose function is to attest and certify, by the notary's hand and official seal, certain classes of documents, in order to give them credit and authenticity in foreign jurisdictions, to take acknowledgments of deeds and other conveyances, and certify them, and to perform certain official acts, chiefly in commercial matters." 66 C.J.S. Notaries § 2.

### Why Documents Are Notarized

A document is notarized in order to protect persons signing an important document. It assures the parties to an agreement that this particular document and no other is the authentic document which is intended to be given full force and effect. Because of the recent improvements in photocopying machines, it is important that certain documents be notarized and notarized properly--otherwise any imposter could forge a signature and substitute an authentic document with an illegally altered and fraudulent document. In addition, the recent adoption of HAR Chapter 5-11 helps prevent the fraudulent use of notarized documents and seals. Specifically, HAR § 5-11-8 requires a notary to evidence every acknowledgment or jurat with a certificate describing the document and is intended to prevent a page with an acknowledgment or a jurat from being detached from its original document and then "switched" or reattached to another document for fraudulent purposes. HAR § 5-11-8 specifies that the notary list the number of pages of each notarized document and provide an identification or description of the notarized document "in close proximity" to the acknowledgment or jurat.

### Duties

"A notary must perform the notary's official duties with integrity, diligence, and skill. The notary's duty is not confined to the one to whom the notary directly renders service, but it extends to all persons who may be affected by the notary's act." 66 C.J.S. Notaries § 17. The powers and duties vested in the notary are personal to the notary and should never be delegated. In other words, a notary should not allow a clerk or deputy to perform a notarial act for the notary.

Under Hawaii law, the duties of a notary public are generally confined to performing the following notarial acts:

1. Taking an acknowledgment -- "An acknowledgment is a public declaration or formal statement of the person executing (signing) an instrument made to the official authorized to take the acknowledgment, that the execution of such instrument was his or her free act and deed. The written evidence of an acknowledgment is the certificate of the officer who takes the acknowledgment, which states in substance

-4-

that the person named in the acknowledgment was known to and appeared before the officer and acknowledged the instrument to be the person's act and deed."   1 Am.Jur. Legal Forms 2d Acknowledgments § 7:1.

2. Administering an oath, affirmation, or affidavit -- An oath is "a solemn pledge or promise made by a person (often called the affiant) with an appeal to God, or a Supreme Being, to attest to the truth of the person's words." Rotham, Notary Public Practices & Glossary (1978), at p. 24. An affirmation is "a solemn statement or declaration made as a substitute for a sworn statement by a person whose conscience will not permit the person to swear at all." 18C Am.Jur. Pleadings and Practice Forms, Oath and Affirmation § 1. An affidavit is "a written or printed statement of facts, made voluntarily, and under oath or affirmation of the party making it, taken before an officer having authority to administer such oath."   Black's Law Dictionary (Rev. 6th Ed.), at p. 58.

3. Taking a deposition -- "The term 'deposition' is sometimes used in a broad sense to describe any written statement verified by oath; but in its more technical and appropriate sense, the meaning of the word is limited to the written testimony of a witness given in the course of a judicial proceeding, either at law or in equity, in advance of the trial or hearing upon oral examination or in response to written interrogatories and where an opportunity is given for cross-examination." 23 Am.Jur.2d Depositions and Discovery § 108.

4. Noting a protest -- A protest is a "formal declaration made by a person in interest or concerned in some act about to be done, or already performed, whereby the person expresses the person's dissent or disapproval, or affirms the act against the person's will.  The object of such a declaration is to preserve some right which would be lost if the person's implied assent could be made out or to exonerate the person from some responsibility which would attach to the person unless the person expressly negatived the person's assent." Black's Law Dictionary (Rev. 6th Ed.), at p. 1223.

In noting a protest, a notary writes down how and when one performed certain acts the notary was called upon to perform.  For example, in noting a protest of negotiable paper, a notary may declare in writing under the notary's seal of office, that at the request of the holder of a bill or note, the notary presented said bill or note to a third party for payment, but said payment was refused for certain reasons, whereupon the notary notified certain parties of the refusal.

### Obligations and Limitations

As a general rule, a notary public cannot certify to, or act in, a matter in which the notary has a personal interest.  66 C.J.S. Notaries § 14.  A notary should never, under any circumstances, notarize the notary's own signature.

"The most important obligation a notary has to the public the notary serves is to judge what acts constitute the practice of law and what acts constitute the practice of a notary public.  If the notary, who is not an attorney, is asked to perform a notarial act that requires the preparation of, or the giving of advice in regard to the preparation of, a legal document or form, the notary should always obtain the advice of an attorney unless the notary has had special education and training." Rotham, supra, at p. 45.

As a general rule, "the notarization of a document that has been written in a foreign language should only be performed by a notary who has a thorough understanding of the foreign language in which the document and/or notarial certificate are written." Rotham, supra, at p. 47.  Similarly, a notary should not notarize a document written in English if the parties to the document who appear before the notary do not appear to speak, read, or understand English.  In the latter instance, the notary should refer the parties to another notary who speaks the foreign language of the parties, or to the foreign consulate, or to an attorney.  The notary may also contact the Notary Public Program for a listing of bilingual notaries.

"The notary should avoid being placed in the position of having to decide whether a person is sufficiently competent to fully understand the agreement the person is signing or the oath or affidavit the person is taking.  The notary should either seek counsel from the notary's own attorney or advise the party who appears to be incompetent to go to an attorney.  If a person is declared to have been incompetent at the time the agreement was signed and notarized, the agreement could be declared null and void." Rotham, supra, at p. 48.

KEALOHA-REPORTS-037527

It is of utmost importance that the individual who is to have a document notarized personally appear before the notary public. A notarization over the telephone is absolutely forbidden.

A notary who is not a licensed attorney may not engage in the practice of law. If a notary attempts to assist someone in the preparation of legal papers such as contracts, deeds, powers of attorney, wills, or bills of sales, such acts may constitute the unauthorized practice of law.

One who has a beneficial interest in a document, no matter how small or nominal the interest, cannot act as a notary public relative to that document. Therefore, one partner cannot as a notary public take the oath of a co-partner in a matter in which the partnership has an interest. However, a notary who is an officer, employee, shareholder, director, or agent of a corporation, trust company, bank, or building and loan association, may take the acknowledgment of any party to any written instrument executed to or by the corporation, trust company, bank or association, or administer an oath to any officer, employee, shareholder, director, or agent of the corporation, trust company, bank or association, or protest nonacceptance or nonpayment of bills of exchange, or negotiable instruments which may be owned or held for collection by the corporation, trust company, bank or association; provided, that it is unlawful for any notary to take the acknowledgment of any party to an instrument, or to protest any negotiable instrument, where the notary is individually a party to the instrument.

Mere relationship to a party does not disqualify a notary. Thus, a wife, who is a notary public, may notarize her husband's documents, provided the wife does not derive a beneficial interest therefrom.

A notary should never notarize a document unless the notary is absolutely satisfied after reading through the notarial certificate, that whatever the notary is certifying to is true and correct. For example, if the notarial certificate indicates that a corporate seal is affixed to the instrument being notarized, the notary should check to be sure the seal is attached.

### Persons Who Are Unable To Sign

If a person appearing before a notary physically cannot sign the person's own name or make a mark on a document presented for notarization, a notary may sign the name of the person, provided that the notary is satisfied that the person has voluntarily given consent for the notary to sign on the person's behalf, if the notary writes, in the presence of the person: "Signature affixed by notary pursuant to section 456-19, Hawaii Revised Statutes." beneath the signature, and if a doctor's written certificate is provided to the notary certifying that the person is unable to physically sign or make a mark because of the disability, and that the person is capable of communicating the person's intentions.

If a person is able to make a mark on a document, the notarization forms should reflect that the person is signing by a mark. In such instances, an attorney may require the presence of at least two impartial witnesses to witness the signing by mark, and the notarial certificate will be drafted to reflect their presence. Thereafter, the person places the person's mark on the document and the notary indicates that it is the mark of the person in question. Example: X (mark of John Doe).

### Civil and Criminal Liability

A notary who willfully and knowingly breaches the notary's official duty may be liable to one injured as a result. A notary may be also liable for a negligent performance of duty resulting in an injury.

In the event of a breach of notarial duties, the notary may be also subject to criminal liability. For example, a notary could be found guilty of the following:

1.      Extortion—the wresting of anything of value from another by duress, force, or by any undue exercise of power.

2.      Forgery—the fraudulent making or altering of a writing, with the intent to deceive another and prejudice the person in some right.

-6-

KEALOHA-REPORTS-037528

3.   Perjury—making, in an official proceeding, under an oath required or authorized by law, a
false statement which the person does not believe to be true.

4.   Subornation—the willful and corrupt procuring of another to commit perjury.

In addition, pursuant to Act 175, 2008 Haw. Sess. Laws, a notary commits the offense of failure to
verify identity and signature if the notary knowingly notarizes a document and:   1) if a witness to the
signing of the instrument, fails to verify the identity of the signer by personally knowing the signer or
comparing the personal appearance of the signer with satisfactory proof of the signer's identity; or 2) if not
a witness to the signing of the instrument, (a) fails to verify the identity of the signer by personally knowing
the signer or by comparing the personal appearance of the signer with satisfactory proof of the signer's
identity, or (b) fails to verify the signature of the signer by recognizing the signature of the signer by
personal familiarity with the signature, or by comparing the signature with satisfactory proof of the
signer's signature. "Proof of the signer's signature and identity" means proof evidenced by production of a
current identification card or document issued by the United States, this State, any other state, or a national
government that contains the bearer's photograph and signature.

A notary commits the offense of failure to authenticate with a certification statement if the notary
knowingly notarizes a document and fails to include any of the following in the notary certification:

1.   Date of notarization and signature of the notary public;
2.   The printed name and stamp or seal of the notary public;
3.   Identification of the jurisdiction in which the notarial act is performed;
4.   Identification or description of the document being notarized, placed in close proximity to
the acknowledgment or jurat; and
5.   A statement of the number of pages and date of the document.

A person commits the offense of misrepresenting a notarized document in the first degree if the
person submits or invites reliance on a document that the person knows has been altered after the
document had been notarized by a notary public in this or any other jurisdiction, and:

1.   The offense was committed with intent to mislead a public servant; or
2.   The offense was committed for purpose of commercial or private financial gain.

A person commits the offense of misrepresenting a notarized document in the second degree if,
with intent to mislead another, the person submits or invites reliance on a document that the person knows
has been altered after the document had been notarized by a notary public in this or any other jurisdiction.

KEALOHA-REPORTS-037529

## III. POWERS AND FUNCTIONS

### Jurisdiction

A notary public commissioned in the State of Hawaii can only perform the notary's duties in the State of Hawaii and not in another state or country.

Because a notarial certificate usually requires a notary to indicate thereon the venue or location of the notarial act, a notary should be aware that the State is divided into four judicial circuits (HRS § 603-1), for venue purposes, as follows:

1.    The first judicial circuit is the island of Oahu and all other islands belonging to the State not hereinafter mentioned, and the district of Kalawao on the island of Molokai [Designated venue "City and County of Honolulu"];

2.    The second judicial circuit includes the islands of Maui, Molokai (except the Kalawao district), Lanai, Kahoolawe, and Molokini [Designated venue "County of Maui"];

3.    The third judicial circuit is the island of Hawaii [Designated venue "County of Hawaii"]; and

4.    The fifth judicial circuit includes the islands of Kauai and Niihau [Designated venue "County of Kauai"].

### Date of Notarial Act

The notary must indicate on the notarized document the date of the notary's notarial act.  This is a very important date and the notary should always be certain that the notary is inserting the correct date. In Hawaii, it is permissible to perform notarial services on a Sunday or a holiday.  Thus, if the notary performs official services on Independence Day, which is a national holiday, the notary indicates on the document as the date of the notary's act "July 4, 20___."

### Changes on Document

Before notarizing any document, the notary public should inspect the document and ascertain whether there are interlineations, erasures, or other changes.  If there are changes, the notary should call them to the attention of the person who is signing the document.  If the changes are approved, the notary public places the notary's initials in the margin of the document opposite each interlineation, erasure, or change.  (For the protection of the notary, it is also advisable to have the person who is signing the document initial each interlineation, erasure, or change.)

It is our understanding that no document containing interlineations, erasures, or other changes will be recorded by the registrar of the State Bureau of Conveyances unless they are initialed by the notary.  It is also our understanding that no document should be rejected for recording solely based on errors or inconsistencies in the certification statement required by HAR § 5-11-8.

### Administering an Oath or Affidavit

Every notary may administer oaths in all cases in which oaths are by law authorized or required to be taken or administered, or in which the administering of an oath may be proper.  (HRS § 456-13)

An **oath** is a solemn pledge made by a person (often referred to as the "affiant") with an appeal to God or a Supreme Being to attest to the truth of the person's statement.  When an affiant's conscience will not permit the affiant to use the term "*swear*", an affirmation is permissible.  Instead, the notary should substitute the term "*affirm*" for the term "*swear*".  In all cases, whether it is an oath or affirmation, the notary should respect the solemnity of the oath and require the affiant to raise the affiant's hand before administering the oath.

The following is an example of an oath or affirmation taken by public officers:

-8-

KEALOHA-REPORTS-037530

"You do solemnly swear or affirm that you will support and defend the Constitution of the United States and the Constitution of the State of Hawaii, and that you will faithfully discharge your duties to the best of your ability."

The person to whom the oath has been administered answers "I do."

An **affidavit** is a written or printed statement of facts, made voluntarily, and under oath or affirmation of the party making it, taken before an officer who has authority to administer an oath. In other words, it is an oath that has been put in writing and signed by the affiant. Before administering an oath in connection with an affidavit, the notary should require the affiant to raise the affiant's hand. The following is an example of an oath that can be administered with an affidavit:

"You do solemnly swear or affirm that the statements made in this affidavit are the truth, the whole truth, and nothing but the truth."

The affiant answers "I do." The notary then adds the notary's "jurat" which states that the person appeared before the notary and signed the affidavit. The notary then signs the jurat, prints, or stamps the notary's commission expiration date, and impresses the notary's official seal.

The essential parts of an affidavit are:

1.   The venue. The venue is the place where the notary is performing the notarial act. In Hawaii, the following is an example of the venue portion.

STATE OF HAWAII     )
                    ) SS.
COUNTY OF MAUI      )

The letters "SS." are an abbreviation for the Latin word "scilicet", which means "namely", or "more particularly described as".

2.   The body of the affidavit. This is the sworn statement of the affiant. It is usually preceded by an introductory statement. Example: "John Doe, being first duly sworn on oath, deposes and says:".

3.   The signature of the affiant.

4.   The jurat. This is the portion of the affidavit commonly referred to as the "subscribed and sworn to" clause. It is the notary's statement that the affiant appeared before the notary on a certain day, took the oath, and signed the statement; in other words, that the notary actually witnessed the affiant's signature.

The following is the customary form for a jurat:

"Subscribed and sworn to before me this

_____ day of _____, 20__."

5.   The signature, seal, and commission expiration date of the notary.

All of the above must be stated for a valid notarization.

KEALOHA-REPORTS-037531

The following is an example of an affidavit:

AFFIDAVIT OF KIMO SMITH

STATE OF HAWAII     )
            ) SS.
CITY AND COUNTY OF HONOLULU )

KIMO SMITH, being first duly sworn on oath, deposes and says:

1. That he is the affiant herein;

2. That he is a resident of the City and County of Honolulu, State of Hawaii;

3. That he has read the affidavit and knows the contents thereof; and

4. That the said affidavit is true to the best of the affiant's knowledge and belief.

Further affiant sayeth not.

(Signature of Kimo Smith)

Subscribed and sworn to before me this

_____ day of _____, 20_.

_____(Signature of Notary Public)_____
(Print name of Notary Public)     (SEAL)
My commission expires:____(expiration date)____

**Taking an Acknowledgment**

An acknowledgment is a formal declaration before an authorized official by a person who has executed a formal or legal written document that the execution of the document was the person's free act and deed. The fundamental purpose of the acknowledgment is to insure the authenticity and voluntariness of the signature. Before certifying an acknowledgment, a notary must either have personal knowledge of the individual who makes it, or be satisfied of the individual's identity by thorough precaution (e.g., checking identification cards). An acknowledgment usually states in substance that the person named therein was known to and appeared before the notary and acknowledged the instrument to be the person's free act and deed.

The general form of an acknowledgement includes the following parts:

1. The venue.

2. The date of the notarial act, which is the date the notary signs the acknowledgment.

3. The body of the acknowledgement, which includes:

- a statement relative to the presence of the signer. Example: "... personally appeared before me" (If a person whose signature is notarized did not actually appear before the notary, the notary could be found guilty of perjury for signing a false statement.).

- the identity of the signer or signers. There is usually a blank space provided for the notary to fill in the name of the signer. The notary should insert the name carefully, making sure that the name on the document or instrument agrees exactly with the name inserted in the acknowledgment. If the signer's middle name is spelled out in the instrument, the notary should spell it out in the acknowledgment and make sure that the party signs the person's full name exactly as it appears on the document.

-10-

- identification of the signer. Example: "... to me known to be the person described in and who executed the foregoing instrument..." A notary must thus either have personal knowledge of the signer, personal familiarity with the signature of the signer, or be satisfied of the person's identity by comparing the signature of the signer with the signature and photograph of a current ID card or document issued by the United States, this State, any other state, or a national government.

- a statement of voluntary acknowledgment. Example: "... and acknowledged that he executed the same as his free act and deed." The notary should always ask the signer to admit, recognize, or acknowledge that the person is aware of the terms and existence of the instrument the person has signed, and that the person signed the same freely and willingly.

4.   Testimonium Clause. Example: "In witness whereof, I have hereunto set my hand and official seal." The notary then signs the notary's official signature, impresses the notary's seal, and fills in the notary's commission expiration date.

The following is an example of an acknowledgment for an individual:

STATE OF HAWAII          )
                         ) SS.
COUNTY OF MAUI           )

On this _____ day of _____, 20___, before me personally appeared John Doe, to me known to be the person described in and who executed the foregoing instrument and acknowledged that he executed the same as his free act and deed.

Witness my hand and seal.

(SEAL)          ____(Signature of Notary Public)_____
                Print name of Notary Public
                My commission expires:__(exp. date)

The following is an example of a corporate acknowledgment:

STATE OF HAWAII          )
                         ) SS.
COUNTY OF HAWAII         )

On this _____ day of _____, 20___, before me personally appeared John Doe and James Smith, to me personally known, who being by me duly sworn, did say that they are the President and Secretary, respectively, of XYZ Corporation, and that the seal affixed to the instrument is the corporate seal of the corporation, and that the instrument was signed and sealed on behalf of the corporation by authority of its board of directors, and John Doe and James Smith acknowledged the instrument to be the free act and deed of the corporation.

(SEAL)          ____(Signature of Notary Public)_____
                (Print name of Notary Public)
                My commission expires:__(exp. date)

If the corporation has no corporate seal, the notary should line out and initial "the seal affixed to the instrument is the corporate seal of the corporation" and add "and that the corporation has no corporate seal."

-11-

KEALOHA-REPORTS-037533

The following is an example of an acknowledgement of an individual acting by power of attorney:

STATE OF HAWAII         )
                           ) SS.
COUNTY OF KAUAI       )

On this _____ day of _____, 20___, before me personally appeared Jane Smith, to me known to be the person who executed the foregoing instrument on behalf of Greg Thompson and acknowledged that she executed the same as the free act and deed of said Greg Thompson.

IN WITNESS WHEREOF, I have hereunto set my hand and seal.

(SEAL)                  _____(Signature of Notary Public)_____
                          Print name of Notary Public)
                          My commission expires:__(exp. date)__

An acknowledgment of an individual acting by power of attorney should never be notarized unless the notary is completely satisfied that the attorney-in-fact does indeed have the authority to sign the instrument for the individual executing the instrument, and that the power of the attorney is in full force and effect.

## Notary Certificate

Pursuant to HAR § 5-11-8, "every acknowledgment or jurat shall be evidenced by a certificate signed and dated by a notary public". The certificate shall include:

1. The printed name of the notary;
2. The official stamp or seal of the notary;
3. The signature of the notary;
4. The identification of the jurisdiction in which the notarial act is performed;
5. The identification or description of the document being notarized, which shall be in close proximity to the acknowledgment or jurat;
6. The number of pages of the document;
7. The date of the document; and
8. The date of the certificate.

The following is an example of a certificate that complies with HAR § 5-11-8.

```
Doc. Date: _____   # Pages: _____

Notary Name: _____   _____ Circuit

Doc. Description: _____

_____

_____          (Stamp or Seal)
Notary Signature              Date
N O T A R Y   C E R T I F I C A T I O N
```

KEALOHA-REPORTS-037534

As an alternative, the requisite notary certification information can be included within the jurat or acknowledgment itself (for example, one form of a particular type of notarization could be: "This 5-page [identification or description of notarized document], dated _____, was subscribed and sworn to before me this ____ day of _____, (year), in the _____ Circuit of the State of Hawaii, by John H. Doe.")

### Fees Notaries May Charge

HRS § 456-17 provides that  notaries (and, in limited circumstances set forth in HRS § 456-18(3), notaries in government services) are entitled to receive the following fees for notarial services:

For noting the protest of mercantile paper............................   $5.00
> (Noting of a "protest" in this case is a formal written statement made by the notary public under the notary's seal of office, that at the request of a holder of a mercantile paper [negotiable paper, such as bills, notes, checks, etc.], the holder presented said mercantile paper to a third party for payment on a certain date, but that such payment was refused for certain reasons, whereupon the notary notified certain parties of the refusal.  Protests of mercantile paper are usually done by banks and other financial institutions.)

For each notice and certified copy of protest...........................   $5.00
> (Besides protests of mercantile paper, there is a protest connected with maritime law.  A maritime protest is a written statement made by the master of a vessel, attested by a notary, to the effect that damages suffered by the ship in the ship's voyage were caused by storms or other perils of the sea without any negligence or misconduct on the master's part.)

For noting any other protest...................................................   $5.00

For every notice thereof and certified copy of said
protest.......................................................................... $5.00

For every deposition or official certificate or
copy thereof................................................................   $5.00
> (A "deposition" is the testimony of a witness taken not in open court and reduced to writing and duly authenticated; it is usually intended to be used at trial or in preparation for trial.)

For administration of an oath, including the certificate of
such oath (for original plus four copies).....................   $5.00

For affixing the certificate of an oath to every duplicate
original instrument beyond four....................................   $2.50

For taking any acknowledgment (original plus one
duplicate original)......................................................   $5.00
                                    for each party signing

For affixing the certificate of an acknowledgment to every
duplicate original beyond the first copy......................   $2.50
                                    for each person making
                                    the acknowledgment

For administration of an oath of loyalty...........................**No charge**
> (An "oath of loyalty" in most instances is taken by one who is employed by or serves in the State or county governments.)

**The charges for official services must be limited to the prescribed fees.  An overcharge is deemed to be a violation of law.**  The notary may make further charges for unofficial services, but the charging of a round sum for notarial and other services together is not permissible.  A notary may charge less than the statutory fees for the notary's acts.

KEALOHA-REPORTS-037535

A notary who charges for the notary's official services must secure a State gross income tax license. Fees collected by the notary are subject to the State general excise tax.

## Fees Charged To Notaries

The Attorney General shall charge and collect the following fees for:

| | |
|---|---|
| Application for notary public commission.............................. | $10.00 |
| Application for renewal of notary commission........................ | $10.00 |
| Application for restoration of forfeited commission................ | $10.00 |
| Application for reinstatement of suspended commission........ | $10.00 |
| Issuance of notary public commission.................................... | $40.00 |
| Renewal of notary public commission..................................... | $40.00 |
| Each examination.................................................................. | $10.00 |
| Restoration of forfeited commission........................................ | $60.00 |
| Commission name change....................................................... | $10.00 |
| Change in judicial circuit......................................................... | $10.00 |
| Notary public manual.............................................................. | $ 3.00 |
| Notary public manual mailed................................................... | $ 3.85 |
| Certified copy of record of each notarial transaction from a notary public's record book in the disposition of the Attorney General, per notarial transaction................................ | $ 5.00 |
| Copying, per printed page....................................................... | $ 0.25 |

Checks should be made out to **"State Director of Finance"**.

The fees collected by the Attorney General shall be deposited into the notaries public revolving fund established by HRS § 456-9.5, except that if that fund is terminated, the fees shall thereafter be deposited with the director of finance to the credit of the general fund.

The court fees for filing a copy of a commission and for each certificate of authentication shall be specified by the Supreme Court.

## Notaries Public Revolving Fund

There is established in the state treasury the notaries public revolving fund into which shall be deposited:

1. All fees, charges, or other payments received pursuant to HRS § 456-9;
2. Penalties and fines for violations of HRS §§ 456-3, 456-7, or 456-16;
3. Appropriations made for deposit into the notaries public revolving fund; and
4. Interest earned on money in the notaries public revolving fund.

The notaries public revolving fund shall be administered by the Department of the Attorney General. Notwithstanding any law to the contrary, moneys in the notaries public revolving fund shall be

-14-

KEALOHA-REPORTS-037536

used for personnel costs, the acquisition of equipment, and operating and administrative costs deemed necessary by the Department of the Attorney General to administer HRS Chapter 456. The moneys in the fund may also be used to train personnel as the Attorney General deems necessary, and for any other activity related to notaries public.

## DISCLAIMER

The information contained in this manual is intended to provide general information and is not a substitute for obtaining legal advice or other competent professional assistance to address specific situations. Since this manual does not contain subsequent changes to the law, it should only be used as a general source of information and is not intended to be a substitute for a careful reading of the statutes and rules pertaining to notaries. Readers are advised to check the current laws to determine if any changes have occurred since publication.

KEALOHA-REPORTS-037537

## ACT 175

### Relating to Fraud Prevention

SECTION 1.  The legislature finds that every notary public must keep an engraved seal of office or a rubber stamp facsimile seal that clearly shows, when embossed, stamped, or impressed upon a document, the notary's name and the words, "notary public" and "State of Hawaii."   The notary public must authenticate all the notary's official acts, attestations, certificates, and instruments and always add to an official signature the typed or printed name of the notary and a statement showing the date that the notary's commission expires.

The legislature also finds that each time a notary public notarizes a document, the notary public must record the type, date, and time of day of the notarial act, the title or type and date of the document or proceeding, the signature, printed name, and address of each person whose signature is notarized and of each witness, other parties to the instrument, and the manner in which the signer was identified.   All copies or certificates granted by the notary must be under the notary's hand and notarial seal and shall be received as evidence of such transactions.

The legislature further finds that, notwithstanding the requirements that attend notarization of documents, there is an alarming increase in the alteration of notarized documents for the purpose of identity theft and fraud.  For example, a Hawaii man with a federal criminal record involving bank fraud, bogus names, and false checks was recently convicted of identity theft and other offenses arising from the use of a notarized document, relating to the sale of an automobile, to transfer land and property.

The purpose of this Act is to deter the commission of crimes against people and property by the use of fraudulent notarized documents by comprehensively strengthening the notary public laws relating to the authentication of certified statements.

SECTION 2.  Chapter 456, Hawaii Revised Statutes, is amended by adding four new sections to be appropriately designated and to read as follows:

"**§456-A  Definitions.**  As used in this chapter, unless the context requires otherwise:
"Alter" means to change by means of erasure, obliteration, deletion, insertion of new content, or transposition of content.
"Personally knowing" means having an acquaintance, derived from association with the individual, which establishes the individual's identity with at least a reasonable certainty.
"Proof of the signer's signature and identity" means proof evidenced by production of a current identification card or document issued by the United States, this State, any other state, or a national government that contains the bearer's photograph and signature.

**§456-B  Powers and duties of the attorney general.**  In addition to any other powers and duties authorized by law, the attorney general shall have all powers necessary or convenient to effectuate the purposes of this chapter, including, without limitation, the following powers:

(1)     Issue notary public commissions to applicants pursuant to this chapter;
(2)     Adopt, amend, or repeal rules pursuant to chapter 91;
(3)     Suspend or revoke any commission for any cause prescribed by this chapter or for any violation of the rules adopted pursuant to this chapter, and refuse to issue any commission for any cause that would be grounds for suspension or revocation of a commission; and
(4)     Impose administrative fines for any cause prescribed by this chapter or for any violation of the rules adopted pursuant to this chapter.

**§456-C  Failure to verify identity and signature.**  (a)  A person commits the offense of failure to verify identity and signature if the person is a commissioned notary public and knowingly notarizes a document and:

(1)     If a witness to the signing of the instrument, fails to verify the identity of the signer by personally knowing the signer or by comparing the personal appearance of the signer with satisfactory proof of the signer's identity; or

-16-

KEALOHA-REPORTS-037538

(2)   If not a witness to the signing of the instrument, fails to verify the identity of the signer by personally knowing the signer or by comparing the personal appearance of the signer with satisfactory proof of the signer's identity; or fails to verify the signature of the signer by recognizing the signature of the signer by personal familiarity with the signature, or by comparing the signature with satisfactory proof of the signer's signature.

(b)   Any person who violates this section shall be guilty of misdemeanor and shall be sentenced in accordance with chapter 706.

(c)   A conviction under this section shall result in the automatic revocation of the notary public's commission.

§456-D   **Failure to authenticate with a certification statement.** (a)  A person commits the offense of failure to authenticate with a certification statement if the person is a commissioned notary public and knowingly notarizes a document and fails to include any of the following in the notary certification:

(1)   Date of notarization and signature of the notary public;
(2)   The printed name and stamp or seal of the notary public;
(3)   Identification of the jurisdiction in which the notarial act is performed;
(4)   Identification or description of the document being notarized, placed in close proximity to the acknowledgment or jurat; and
(5)   A statement of the number of pages and date of the document.

(b)   Any person who violates this section shall be guilty of a misdemeanor and shall be sentenced in accordance with chapter 706.

(c)   A conviction under this section shall result in the automatic revocation of the notary public's commission."

SECTION 3.  Chapter 710, Hawaii Revised Statutes, is amended by adding to part V two new sections to be appropriately designated and to read as follows:

"§710-A   **Misrepresenting a notarized document in the first degree.** (1)  A person commits the offense of misrepresenting a notarized document in the first degree if the person submits or invites reliance on a document that the person knows has been altered after the document had been notarized by a notary public in this or any other jurisdiction, and:
(a)   The offense was committed with intent to mislead a public servant; or
(b)   The offense was committed for purpose of commercial or private financial gain.

(2)   Misrepresenting a notarized document in the first degree is a class C felony.

§710-B   **Misrepresenting a notarized document in the second degree.** (1)  A person commits the offense of misrepresenting a notarized document in the second degree if, with intent to mislead another, the person submits or invites reliance on a document that the person knows has been altered after the document had been notarized by a notary public in this or any other jurisdiction.

(2)   Misrepresenting a notarized document in the second degree is a misdemeanor."

SECTION 4.  Section 456-7, Hawaii Revised Statutes, is amended to read as follows:

"§456-7   **Unauthorized practice as a notary public.** (a)  A person commits the offense of unauthorized practice as a notary public if the person knowingly engages in or offers to engage in any duties of the office of a notary public without first complying with all of the following:

(1)   Being appointed and commissioned as a notary public by the attorney general;
(2)   Filing a copy of the person's commission, an impression of the person's seal, and a specimen of the person's official signature with the clerk of the circuit court of the circuit in which the person resides; and
(3)   Executing an official surety bond pursuant to section 456-5.

KEALOHA-REPORTS-037539

(b)   Any person who violates this section shall be guilty of a misdemeanor and shall be sentenced in accordance with chapter 706.

(c)   Nothing in this section shall be construed to restrict or to do away with any liability for civil damages."

SECTION 5.  Section 456-8, Hawaii Revised Statutes, is amended to read as follows:

"**§456-8   Rules.**  The attorney general, subject to chapter 91, may prescribe such rules as the attorney general deems advisable concerning the administration of this chapter, the appointment and duties of notaries public, the duties of other officers thereunder, and such measures as may be necessary to prevent the fraudulent use of a notarized document after placement of the notary's seal. The rules shall have the force and effect of law."

SECTION 6.  Section 456-9, Hawaii Revised Statutes, is amended to read as follows:

"**§456-9   Fees and administrative fines.**  (a)  The attorney general shall charge and collect the following fees for:

(1)   Issuing the original commission, $40; and
(2)   Renewing the commission, $40.

Notwithstanding the foregoing, the attorney general may establish and adjust fees pursuant to chapter 91.

(b)   The court fees for filing a copy of a commission and for each certificate of authentication shall be specified by the supreme court.

(c)   The attorney general may impose and collect the following administrative fines for a notary public's failure to:

(1)   Maintain an official seal of one type, either a single engraved seal or a single rubber stamp facsimile seal, on which shall be inscribed the name of the notary public, and the words "notary public" and "State of Hawaii" only, $20;
(2)   Surrender the notary public's seal and certificate to the attorney general within ninety days of resignation, removal from office, or the expiration of a term without renewal, $200;
(3)   Authenticate every acknowledgment or jurat with a certificate that shall be signed and dated by the notary, include the printed name and official stamp or seal of the notary, identify the jurisdiction in which the notarial act is performed, describe in close proximity to the acknowledgment or jurat the document being notarized, and state the number of pages and date of the document, $500;
(4)   Record all of the notary public's transactions as prescribed by section 456-15 and applicable rules, $200;
(5)   Surrender the notary public's record books to the attorney general within ninety days of the end date of the commission, resignation, or removal from office, $500; and
(6)   Notify the attorney general within ten days after loss, misplacement, or theft of the notary public's seal, stamp, or any record book, inform the appropriate law enforcement agency in the case of theft, and deliver a copy of the law enforcement agency's report of the theft to the attorney general, $20.

(d)   The foregoing moneys collected by the attorney general pursuant to this section shall be deposited into the notaries public revolving fund established by section 456-9.5, except that if that fund is terminated, the foregoing moneys shall thereafter be deposited with the director of finance to the credit of the general fund."

SECTION 7.  Section 456-9.5, Hawaii Revised Statutes, is amended by amending subsection (a) to read as follows:

KEALOHA-REPORTS-037540

"(a)     There is established in the state treasury the notaries public revolving fund into which shall be deposited:

(1)     All fees, administrative fines, charges, or other payments received pursuant to section 456-9;
(2)     Penalties and fines for violations of section 456-3, 456-7, or 456-16;
(3)     Appropriations made for deposit into the notaries public revolving fund; and
(4)     Interest earned on money in the notaries public revolving fund."

SECTION 8.  Section 456-15, Hawaii Revised Statutes, is amended to read as follows:

"**§456-15   Record; copies as evidence.**  Every notary public shall record at length in a book of records all acts, protests, depositions, and other things, by the notary noted or done in the notary's official capacity.  For each official act, the notary shall enter in the book:

(1)     The type, date, and time of day of the notarial act;
(2)     The title or type and date of the document or proceeding and the nature of the act, transaction, or thing to which the document relates;
(3)     The signature, printed name, and address of each person  whose signature is notarized and of each witness;
(4)     Other parties to the instrument; and
(5)     The manner in which the signer was identified.

All copies or certificates granted by the notary shall be under the notary's hand and notarial seal, and shall be received as evidence of such transactions."

SECTION 9.  This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date.

SECTION 10.  In codifying the new sections added by sections 2 and 3 of this Act, the revisor of statutes shall substitute appropriate section numbers for the letters used in designating the new sections in this Act.

SECTION 11.  Statutory material to be repealed is bracketed and stricken.  New statutory material is underscored.

SECTION 12.  This Act shall take effect on January 1, 2009.

*iManage #633078 (website)*

KEALOHA-REPORTS-037541

FD-302 (Rev. 5-8-10)

 OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry        04/24/2019

On April 24, 2019, American Association of Notaries President Kal
Tabbara (TABBARA) emailed FBI Special Agent Nicole Vallieres. The two
emails from TABBARA were as follows:

Email #1

"Hi Nichole,

Good news. I reached out to Chuck the programmer from 2001-2015. He
researched his files and we found more information. I hope this is
helpful.

Best Regards,

Kal Tabbara

President

American Association of Notaries

8311 Westheimer, Suite 207

Houston, Texas 77063

281-450-8980

kal@usnotaries.com

www.usnotaries.com

---

Investigation on   04/24/2019   at   Kapolei, Hawaii, United States (Email)

File #                                                          Date drafted   04/24/2019

by   Nicole Vallieres

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

KEALOHA-REPORTS-037542

FD-302a (Rev. 05-08-10)

▮▮▮▮▮▮▮▮▮

(U) Additional Information Provided by

Continuation of FD-302 of  Kal Tabbara _____ , On  04/24/2019  , Page  2 of 4

Hi Kal,

This customer had one order placed on 05/25/2008 at 4:05 AM.

The TransactionID was 115467 for $45.90 total.

The order shows that it was shipped on 05/29/2008 at 10:20 AM.

The product ordered was item #505 - Hawaii Notary Seal Embosser with the name listed as Alison Lee Wong.

Thank you,

Chuck"

Email #2
_____

"More info from Chuck

Hi Kal,

Here are answers to the questions:

How does your Account numbering system work?

Account numbers contain the website ID followed by a dash and the customer ID.  "00" is the site ID for NotaryPublicStamps.com.  Both customer IDs and order numbers are generated by an auto-increment number when the new data is written to the database.

KEALOHA-REPORTS-037543

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of    (U) Additional Information Provided by
Kal Tabbara                                          , On  04/24/2019  , Page  3 of 4


What is the date the account was created and how did you come to that
conclusion?

The account was created on 05/25/2008 at 4:05 AM CDT because that was the
date and time when the customer record was written to the database.


What is the name, place of employment and contact number for the
Programmer who knows where the purchase order for AAN are located?

I would imagine David is now the best contact for this information.


Thank you,

Chuck


Best Regards,


Kal Tabbara

President

American Association of Notaries

8811 Westheimer, Suite 207

Houston, Texas 77063

281-450-8980

kal@usnotaries.com

www.usnotaries.com"

KEALOHA-REPORTS-037544

Serial 1341

FD-302a (Rev. 05-08-10)

(U) Additional Information Provided by
Continuation of FD-302 of  Kal Tabbara _____ . On __04/24/2019__ . Page __4 of 4__

An electronic copy of the emails will be maintained in the 1A section of the case file.

KEALOHA-REPORTS-037545

| | |
|---|---|
| **From:** | Kal <kal@usnotaries.com> |
| **Sent:** | Wednesday, April 24, 2019 2:34 PM |
| **To:** | Vallieres, Nicole L. (HN) (FBI) |
| **Cc:** | kal@usnotaries.com |
| **Subject:** | FW: REF # BL-622 |

Hi Nichole,

Good news. I reached out to Chuck the programmer from 2001-2015. He researched his files and we found more information. I hope this is helpful.

Best Regards,

Kal Tabbara
President
American Association of Notaries
8811 Westheimer, Suite 207
Houston, Texas 77063
281-450-8980
kal@usnotaries.com
www.usnotaries.com

   



Hi Kal,

This customer had one order placed on 05/25/2008 at 4:05 AM.
The TransactionID was 115467 for $45.90 total.
The order shows that it was shipped on 05/29/2008 at 10:20 AM.
The product ordered was item #505 - Hawaii Notary Seal Embosser with the name listed as Alison Lee Wong.

Thank you,
Chuck

1

KEALOHA-REPORTS-037546

| | |
|---|---|
| **From:** | Kal <kal@usnotaries.com> |
| **Sent:** | Wednesday, April 24, 2019 2:35 PM |
| **To:** | Vallieres, Nicole L. (HN) (FBI) |
| **Cc:** | kal@usnotaries.com |
| **Subject:** | FROM KAL |

More info from Chuck

Hi Kal,

Here are answers to the questions:

How does your Account numbering system work?
Account numbers contain the website ID followed by a dash and the customer ID. "00" is the site ID for NotaryPublicStamps.com. Both customer IDs and order numbers are generated by an auto-increment number when the new data is written to the database.

What is the date the account was created and how did you come to that conclusion?
The account was created on 05/25/2008 at 4:05 AM CDT because that was the date and time when the customer record was written to the database.

What is the name, place of employment and contact number for the Programmer who knows where the purchase order for AAN are located?
I would imagine David is now the best contact for this information.

Thank you,
Chuck


Best Regards,

Kal Tabbara
President
American Association of Notaries
8811 Westheimer, Suite 207
Houston, Texas 77063
281-450-8980
kal@usnotaries.com
www.usnotaries.com



1

KEALOHA-REPORTS-037547



2

KEALOHA REPORTS 037548